# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

MICHAEL BINDAY,                                     :          Case No. 12-cr-00152-CM

    Petitioner

v.                                                                      :

UNITED STATES OF AMERICA,

    Respondent.                                          :

---------------------------------------------------------------- x

## NOTICE OF MOTION AND MOTION FOR BAIL PENDING RESOLUTION OF MOTIONS PURSUANT TO SECTIONS 2255/2241

    PLEASE TAKE NOTICE that Michael Binday, by his counsel David W. Shapiro, hereby moves to be released on bail pending resolution of his pending motion to vacate his conviction and sentence pursuant to 28 U.S.C. §§ 2255 and 2241, pursuant to the authority of this Court to grant bail when an inmate demonstrates a substantial claim and extraordinary circumstances.

# MEMORANDUM OF LAW IN SUPPORT OF MICHAEL BINDAY'S MOTION FOR BAIL PENDING RULING ON HIS 28 U.S.C. § 2255/2241 MOTION

## PROCEDURAL BACKGROUND AND RECENT LEGAL DEVEOPMENTS

On July 31, 2014, Michael Binday was convicted of mail and wire fraud after trial. After his conviction was affirmed on appeal, he moved for rehearing en banc and for certiorari because the government's theory of "property" was inconsistent with Supreme Court precedent in *Skilling v. United States*, 130 S. Ct. 2896 (2010), and *Cleveland v. United States*, 531 U.S. 12 (2000). The Second Circuit denied his rehearing petition, and the Supreme Court denied certiorari.

On May 7, 2020, the Supreme Court decided *Kelly v. United States*, 140 S. Ct. 1565 (2020), and it ruled that the government must prove the defendant's object was to obtain property, in contrast to the Second Circuit's construction that "the mail and wire fraud statutes do not require a defendant to obtain or seek to obtain property," *United States v. Finazzo*, 850 F.3d 94, 107 (2d Cir. 2017). In *Kelly*, the government claimed that the Port Authority's "control" over a bridge's lane allocation was "property," such that defendants' scheme to "commandeer" that right violated the wire fraud statute. *Id*. at 1569. The Supreme Court said no and explained the right to "control" access to the bridge was not "property." While defendants had "exercised" (for selfish reasons) the Port Authority's "regulatory rights of allocation, exclusion, and control," such rights were not "property" protected by the fraud statutes. *Id*. at 1572-73

More recently, the Supreme Court vacated the judgment in *United States v. Blaszczak*, 947 F.3d 19, 32-33 (2d Cir. 2019), *cert. granted, judgment vacated sub nom. Olan v. United States*, 141 S. Ct. 1040 (2021), at the government's request and in light of *Kelly*. On remand to the Second Circuit, and on April 2, 2021, the government confessed error, conceding that the "predecisional confidential information" of a government agency (the CMS) was not property, contrary to the Second Circuit's conclusion that it was. The government admitted that a putative victim's labor and resource costs do not constitute property unless the defendants sought to obtain those resources through material and knowing false statements. The government asked the Second Circuit to reverse the defendants' fraud convictions.

Binday incorporates the facts and legal arguments of his 2255 motion in this motion for bail.

### **FACTS RELEVANT TO THIS MOTION**

On July 1, 2016, Michael Binday surrendered to begin serving his 144-month prison sentence. He has served 57 months. According to the Bureau of Prisons calculation on the inmate locator website, Binday will be released September 20, 2026 (and likely would be released to home confinement in March 2026). In addition, because of his age, Binday could be released to home confinement on June 30, 2024 under the elderly home confinement provisions (and that does not include good time credits).

These calculations do not consider other credits against his sentence to which Binday may be entitled, such as Earned Time Credits under the First Step Act and early

3

release under the pending COVID–19 Safer Detention Act of 2021. If and when those credits are applied, Binday believes he has now served 50% of his sentence.

## ARGUMENT

BINDAY HAS RAISED SUBSTANTIAL CLAIMS IN HIS 2255/2241 MOTION AND EXTRAORDINARY CIRCUMSTANCES EXIST TO JUSTIFY RELEASING HIM ON BAIL

A "district court has inherent power to enter an order affecting the custody of a habeas petitioner who is properly before it contesting the legality of his custody." *Ostrer v. United States*, 584 F.2d 594, 596 n.1 (2d Cir.1978) (citing *Johnston v. Marsh*, 227 F.2d 528, 531 (3d Cir. 1955)). The Second Circuit has recognized that a habeas petitioner should be granted bail when "'extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective.'" *Id*. (quoting *Calley v. Callaway*, 496 F.2d 701, 702 (5th Cir.1974)). *See Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001) ("Petitioner must demonstrate that the habeas petition raise[s] substantial claims and that extraordinary circumstances exist[] that make the grant of bail necessary to make the habeas remedy effective").

Where a defendant shows that a change in the law has made the conduct for which he was convicted no longer criminal, he has established both a substantial claim and an extraordinary circumstance justifying bail pending final resolution of a 2255 motion. *See Binion v. United States*, 352 U.S. 1028, 1028 (1957); *United States v. Thompson*, 152 F. Supp. 292 (S.D.N.Y. 1957) (where defendant had served more time in prison than that which the Supreme Court might deem constitutional in a case in which the Court had

accepted certiorari, the defendant was admitted to bail). Otherwise, the defendant who has not committed a crime will remain in prison during the necessarily extended process of reviewing, deciding, and appealing his 2255 motion. *See United States v. Geddings*, 2010 WL 2639920 at *1 (June 29, 2010 E.D.N.C.) (granting bail to defendant convicted of fraud on a theory of fraud rejected by the Supreme Court in *Skilling*).

Here, Binday has established a substantial claim and extraordinary circumstances.

<u>Binday's Substantial Claim</u>

Binday was convicted of fraud for depriving insurers of information relevant to their decisions to enter into insurance contracts. The Second Circuit relied on "four specific discrepancies or harms" to the insurers from selling STOLI policies, and "reputational concerns," which denied the insurers the "right to control" their "assets" to affirm Binday's conviction. *United States v. Binday*, 804 F.3d 558, 567, 570, 573 (2d Cir. 2015). That decision was consistent with Second Circuit precedent because, as explained by Judge Kaplan in *Gatto* and as the Second Circuit held in *Finazzo*, the government need not prove that a defendant sought to obtain any property. However, according to the Supreme Court in *Kelly*, deceit accompanied by incidental economic harm to the victim is not fraud unless the defendant's object was to obtain money or property for himself or others.

Now the government has conceded in *Blaszczak* that the economic effects of deceptions like Binday's cannot be considered "property." It conceded that, after *Kelly*, the "confidential information at issue in this case" – that is, the CMS decision-making process concerning "upcoming changes to agency rules governing reimbursement rates"

5

– "does not constitute 'property'" because, even though the CMS invested time and resources into generating the confidential information, the defendants' object was not to obtain those resources. Brief on Remand for the United States at 3, 8, 13. (A copy of the government's brief is attached as an exhibit to this motion.)

With respect to just one criminal charge against the defendants (fraud against the government under 18 U.S.C. § 371), the government argued that there was a *Yates v. United States*, 354 U.S. 298 (1957), error (legally valid and invalid criminal liability theories in the same case), but the error was harmless. Its reasoning regarding section 371 is irrelevant here. What is significant is that the government did not argue that other formulations or characterizations of property interests in the case were proper for the wire fraud convictions or that the *Kelly* error was harmless.

It is therefore relevant to Binday's motions to review the property identified by the government and the Second Circuit in *Blaszczak*. The government argued on appeal that there was sufficient evidence to convict the defendants because "confidential government information," like the confidential business information in *Carpenter v. United States*, 484 U.S. 19, 27 (1987), has value and is therefore property. Brief of the United States, *United States v. Blaszczak*, Case No. 18-2811, Doc. 201 at 106-07. It asserted that *Cleveland* was inapposite because the decision "narrowly" held that an unissued license in the government's hands is not property, *id*. at 107, 109. Citing *Fountain* (which Binday discussed at page 20 of his pending 2255/2241 motion), the government argued that it does not matter that a right to regulate versus a right to revenue is implicated by the defendant's conduct because "confidential information … has long been recognized as

property … and the fraud statutes likewise forbid its misappropriation." *Id*. at 110. It contended that the defendants interfered with CMS's "right to control its confidential information" and thus violated the fraud statutes. *Id*. at 59, 67, 126, 127, 130.

In affirming the convictions, the Second Circuit embraced the government's narrow view of *Cleveland*, reaffirmed its broad construction of the word "property" to include the right to control (or, as the Second Circuit phrased it in *Blaszczak*, the "right to exclude"), and reiterated its belief that the government need not prove the defendant's object was to obtain the identified property (as opposed to causing incidental economic harm). It held that "property" means "something of value"; confidential information has value and thus can be "property"; courts have "consistently rejected attempts" to apply *Cleveland*'s holding "expansively"; CMS's "right to exclude" the public from its internal (confidential) information is property; and CMS had an economic interest in that confidential information because it invested "time and resources into generating" its "nonpublic predecisional information." *Blaszczak*, 947 F.3d at 32-33.

That holding conflicted with *Kelly*, according to the government. A person who interferes with a putative victim's decision-making, right to control, right to exclude, etc. through false statements or otherwise cannot be guilty of fraud without proof that his *object* was to *obtain* those rights (which must be traditional concepts of property) for himself or others. Without that proof, any economic harm or impact on the victim is incidental to the deceit, but not criminal. Moreover, prosecutors cannot claim that "property" means one thing for the government and another for businesses or individuals. "Object" and "obtain" mean the same thing in all mail/wire fraud prosecutions.

7

The government's confession of error in *Blaszczak* confirms that Binday's current 2255/2241 motion is meritorious: the object of his conduct was to buy and pay for insurance, while earning commissions on the sales. The "property" identified by the government – lower profits from STOLI policies and reduced reputation – were incidental economic harms that do not constitute property because Binday did not seek to obtain either one (even assuming one can obtain another's lower profits and reputation in the circumstances of Binday's case). "Predecisional confidential information" is just another way to express the "right to control" one's decision-making process.

In Binday's case, the government did not contend that the insurers' lower profits and negative reputational impacts were Binday's object. To the contrary, the government contended that Binday lied to earn commissions for fully paid policies. Binday wasn't trying to damage the insurers; he was trying to buy and pay for insurance policies.

Moreover, the jury instructions did not limit the jury's consideration to Binday's object and explain that incidental economic harm does not constitute property unless it is the defendant's object. The jury was therefore authorized to convict Binday solely on his deceptive statements in insurance applications and without regard to the object of his conduct or the incidental nature of the economic harm caused to the insurers.

Binday's prosecution was grounded in theories that are not crimes; there are no alternative, legal theories to which the government may point to support the convictions; and there are no separate counts charging other crimes or particular transactions untainted by the government's illegal theory.

<u>Extraordinary Circumstances Support a Release on Bail</u>

Binday has completed a significant part of his prison sentence. He is eligible for release to home detention; the ordinary delays inherent in motion practice and appeals may, and likely will, extend for at least one year and maybe more. Given the tenuous nature of Binday's conviction, fairness dictates in favor of his release on bail. Having fully complied with all conditions of his release pending trial and appeal, and thereafter, Binday has proved himself to be an excellent candidate for bail.

## **CONCLUSION**

For the foregoing reason, Binday respectfully requests that this Court order that he be released on bail immediately.

Respectfully Submitted,



_____
David W. Shapiro, NY Bar #2054054
The Norton Law Firm
dshapiro@nortonlaw.com