**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

........................................................................- x

MICHAEL BINDAY,                    :          Case No. 17-cv-4723-CM

    Petitioner                                    (12-cr-152-CM)

    v.                                    :

UNITED STATES OF AMERICA,

    Respondent.                          :

........................................................................- x

## <u>RULE 60 MOTION</u>

    Michael Binday, by his attorney, David W. Shapiro, hereby moves pursuant to Rule 60(b) of the Federal Rules of Civil Procedure for relief from the judgment of this Court dated May 23, 2018, denying Binday's motion to vacate his conviction pursuant to 28 U.S.C. § 2255.

David W. Shapiro
The Norton Law Firm
200 Third St.
Suite 200
Oakland, CA 94602
dshapiro@nortonlaw.com

# **TABLE OF CONTENTS**

JURISDICTION ..................................................................................................1

INTRODUCTION ...............................................................................................2

STATEMENT OF THE CASE .............................................................................4

   FACTS RELEVANT TO THIS PETITION ..........................................................4

   BINDAY'S CHALLENGES TO RIGHT TO CONTROL FRAUD AND THE
   SUPREME COURT'S VINDICATION OF HIS POSITION ...............................4

      The Government Chooses Right to Control as its Strategy...............................4

      The Second Circuit Affirms.................................................................5

      Binday Seeks Supreme Court Review.....................................................6

      Binday Files a Section 2255 Motion Concerning the Right to Control ............6

      Binday's Second Certiorari Petition Seeking Right to Control Review............7

      Binday's *Amicus* Briefs Challenging Right to Control Fraud ..........................7

      Binday Files a Section 2255 Motion Based on *Kelly* ........................................7

      Binday's Third Certiorari Petition Challenging Right to Control Fraud............8

      The Supreme Court Grants Binday's Petition, Vacates, and Remands .............8

      Second Circuit Proceedings After Remand ...............................................8

      Litigation Pending in the Supreme Court ..................................................9

   ARGUMENT ..................................................................................................11

BINDAY IS ENTITLED TO RELIEF FROM THE DENIAL OF HIS FIRST 2255

MOTION .......................................................................................................11

   This Court Lacked Jurisdiction to Deny Binday's First 2255 Motion .................12

   Extraordinary Circumstances Justify Reopening Binday's First 2255 Motion ...14

   The Courts' Continued Legal Errors Support Binday's Rule 60 Motion.............16

   Binday's Motion is Timely ..................................................................17

   CONCLUSION ...............................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Binday v United States*,
    804 F.3d 558 (2d Cir. 2015)......................................................................5

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.*,
    517 F.3d 1271 (11th Cir. 2008)..............................................................20

*Buck v. Davis*,
    580 U.S. 100 (2017) ...............................................................14, 15, 17

*Bynoe v. Baca*,
    966 F.3d 972 (9th Cir. 2020)...................................................................15

*Carlson v. Green*,
    446 U.S. 14 (1980) .....................................................................................7

*Ciminelli v. United States*,
    598 U.S. 306 (2023) ...........................................................1, 3, 13, 19

*Cleveland v. United States*,
    531 U.S. 12 (2000) .....................................................................................4

*Cobb v. United States*,
    2019 WL 2607002 (E.D.N.Y. Jan. 11, 2019)..................................16, 17

*Colucci v. Beth Israel Med. Ctr.*,
    531 F. App'x 118 (2d Cir. 2013).........................................................17

*Elustra v. Mineo*,
    595 F.3d 699 (7th Cir. 2010)..................................................................19

*Fasulo v. United States*,
    272 U.S. 620 (1926) ...................................................................................2

*Grace v. Bank Leumi Tr. Co. of NY*,
    443 F.3d 180 (2d Cir. 2006)...........................................................12, 18

*Harris v. United States*,
    367 F.3d 74 (2d Cir. 2004)......................................................................15

*In re Houston Oil Tr. Sec. Litig. MDL-625*,
　1993 WL 117764 ................................................................................19

*Kelly v. United States*,
　590 U.S. 391 (2020) ...........................................................................1, 7

*Kemp v. United States*,
　596 U.S. 528 (2022) ...............................................................11, 16, 17

*Kemp v. United States*,
　2021 WL 2102860 (11th Cir. May 25, 2021) .................................16, 17

*Matarese v. LeFevre*,
　801 F.2d 98 (2d Cir. 1986)...................................................................15

*McNally v. United States*,
　483 U.S. 350 (1987) ...............................................................................2

*Nemaizer v. Baker*,
　793 F.2d 58 (2d Cir. 1986)...................................................................18

*Phelps v. Alameida*,
　569 F.3d 1120 (9th Cir. 2009)..............................................................15

*Rippey v. Utah*,
　783 F. App'x 823 (10th Cir. 2019)........................................................19

*Sanders v. United States*,
　373 U.S. 1 (1963) .................................................................................15

*Skilling v. United States*,
　561 U.S. 358 (2010) ...............................................................................3

*Smith v. Barry*,
　502 U.S. 244 (1992) .............................................................................19

*Stokes v. Williams*,
　475 F.3d 732 (6th Cir. 2007).................................................................15

*Stone v. I.N.S.*,
　514 U.S. 386 (1995) .............................................................................12

*Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*,
    864 F.3d 172 (2d Cir. 2017)....................................................................................18

*United States v. Aquart*,
    92 F.4th 77 (2d Cir. 2024).....................................................................................13

*United States v. Bruchhausen*,
    977 F.2d 464 (9th Cir. 1992)...................................................................................5

*United States v. Finazzo*,
    850 F.3d 94 (2d Cir. 2017)......................................................................................6

*United States v. Indoor Cultivation Equip. from High Tech Indoor Garden Supply*,
    55 F.3d 1311 (7th Cir. 1995)..................................................................................12

*United States v. O'Garro*,
    700 F. App'x 52 (2d Cir. 2017)...............................................................................6

*United States v. Sadler*,
    750 F.3d 585 (6th Cir. 2014)..................................................................................13

*United States v. Sanin*,
    252 F.3d 79 (2d Cir. 2001)....................................................................................14

*United States v. Viloski*,
    557 F. App'x 28 (2d Cir. 2014)...............................................................................6

*United Student Aid Funds, Inc. v. Espinosa*,
    559 U.S. 260 (2010) .............................................................................................12

*Welch v. United States*,
    578 U.S. 120 (2016) .............................................................................................15

*Wesco Prod. Co. v. Alloy Auto. Co.*,
    880 F.2d 981 (7th Cir. 1989)..................................................................................12

**Statutes**

28 U.S.C. § 2255 ..................................................................................................4, 6

**Rules**

FRCP 7(b)............................................................................................................19

FRCP 60(b)..........................................................................................11, 18, 20

FRCP 60(c)(1) ............................................................................................11, 17

FRCP Rule 60..................................................................................*Passim*

Rule 7 ........................................................................................................19, 20

Rule 60(b)(1) ..........................................................................................16, 17, 19

Rule 60(b)(1), (2), and (3) ....................................................................................17

Rule 60(b)(4) ..........................................................................................12, 14

Rule 60(b)(4) or (6) ..............................................................................................17

Rule 60(b)(6) ..........................................................................................14, 15, 16, 17

**Other Authorities**

Tr. at 1579...........................................................................................................5

## JURISDICTION

This Rule 60 motion asks this Court to revisit Binday's section 2255 motion, in which his primary claim was that his trial attorney was ineffective. *Binday v. United States*, No. 17-cv-4723 (S.D.N.Y.) (hereafter referred to sometimes as the "First 2255 Motion") This Court denied that motion, and the Second Circuit denied Binday authorization to appeal.

Binday thereafter filed a second-in-time 2255 motion, arguing that it was not "second or successive" within the meaning of section 2255(h) and that his conviction was undermined by the decision in *Kelly v. United States*, 590 U.S. 391 (2020). The Second Circuit denied Binday's application on June 1, 2021. After failing to convince the court of appeals to reconsider, Binday petitioned the Supreme Court for certiorari.

On May 22, 2023, the Supreme Court granted Binday's petition and remanded to the Second Circuit to reconsider its order in light of *Ciminelli v. United States*, 598 U.S. 306, 315 (2023).

On remand, from the Supreme Court, the Second Circuit ruled that: "The above referenced case [17-cv-4723] is reinstated restoring jurisdiction to this Court. The mandate in this case is hereby recalled and the case is reinstated." *Binday*, No. 17-cv-4723, Doc. 19.

On May 6, 2024, the Second Circuit denied Binday's motion to file a new 2255 motion based on *Ciminelli*. *Binday v. United States*, No. 21-1206 (2d Cir.) Doc. 155 (denying motion to file 2255 motion in 17-cv-4723). (A copy of the May 6, 2024 Order is at App-1 to Exhibit 1 and is referred to herein as the "May 6 Order".)

On June 7, 2024, Binday filed a petition for certiorari in the United States Supreme Court challenging the Second Circuit's order. Petition for a Writ of

Certiorari, *Binday v. United States*, 23-1290 (filed June 7, 2024) (attached as Exhibit 1). On June 17, 2024, the same day that the Supreme Court granted certiorari in *Kousisis v. United States*, No. 23-909, the government waived its right to respond to Binday's petition. As of the date of this motion, the Supreme Court has not asked the government to respond or held a conference on Binday's petition.

## **INTRODUCTION**

Thirty-six years after the Supreme Court struck down as unconstitutional a judge-made constructive crime known as "honest services fraud," *McNally v. United States*, 483 U.S. 350 (1987), the Supreme Court in *Ciminelli* rejected another constructive crime superimposed by some lower courts on the fraud statutes: "right to control fraud." Honest services and right to control fraud each criminalized conduct that deprived a complainant of an intangible right associated with property ownership. According to the opinion in *Ciminelli*, both of those so-called crimes were not adopted by Congress, they were judicially constructed offenses, they intruded in areas reserved for state regulation, they criminalized contract breaches, and they were amorphous in their description by lower courts and their application to particular people. In short, they denied people like Binday fair notice and thus due process.

In *McNally*, the Supreme Court explained that, when Congress used the word "property" in the fraud statute in 1909, it meant the "common understanding" of schemes to obtain money or property from victims through false representations. Congress did not adopt a statute to authorize the government to "set[] standards of disclosure," *id.* at 360—whether for employees who owed a duty of honesty to employers or for businesspeople negotiating contracts. "There are no constructive offenses; and before one can be punished, it must be shown that his case is plainly within the statute." *Id.* (citing *Fasulo v. United States,* 272 U.S. 620, 629 (1926)).

In May 2023, in *Ciminelli*, the Supreme Court rejected right to control fraud for the same reasons: the theory "vastly expands federal jurisdiction without statutory authorization … [b]ecause the theory treats mere information as the protected interest, [and thus] almost any deceptive act could be criminal. . . . The theory thus makes a federal crime of an almost limitless variety of deceptive actions traditionally left to state contract and tort law."  598 U.S. at 315.  The right to control was not "plainly within the statute," and reading the theory into the statute violated the separation of federal and state authority (federalism), violated the rules against constructive offenses and lenity, and criminalized contract breaches.  Thus, the Court rejected right to control fraud for the same reasons it rejected honest services fraud in 1987: it was not part of the statute passed by Congress over 100 years ago.

From the start, Binday challenged right to control fraud.  He did what courts expect criminal defendants to do to preserve constitutional claims by raising his arguments at every step of his prosecution: he raised a claim at trial, on appeal, in a petition for rehearing *en banc* in the Second Circuit, in his first certiorari petition on direct appeal, in two amicus briefs filed in the Supreme Court, in his second certiorari petition, multiple times in the Second Circuit, and then in his third certiorari petition soon after the *Ciminelli* defendants filed their own petition.  Every point Binday made in his filings appeared in—and was adopted by—the Supreme Court's *Ciminelli* opinion.

Two weeks after it decided *Ciminelli*, the Supreme Court granted Binday's petition for certiorari (from the Second Circuit's order denying Binday authorization to file a second in time 2255 motion).  It remanded the matter to the Second Circuit for proceedings consistent with *Ciminelli*.

Despite the unmistakable constitutional bases for the Supreme Court's ruling in *Ciminelli* (and in its predecessors—*McNally*; *Skilling v. United States*, 561 U.S.

358, 400 (2010); and *Cleveland v. United States*, 531 U.S. 12 (2000)), the Second Circuit erroneously refused to let Binday file a 28 U.S.C. § 2255 motion to challenge his conviction. *See* May 6 Order.

## STATEMENT OF THE CASE

**FACTS RELEVANT TO THIS PETITION**

Binday, a life insurance broker, was convicted of mail and wire fraud under the Second Circuit's expansive "right to control" theory. The government alleged Binday deprived insurance companies of information they considered valuable by signing an application that represented the applicant had no intent to sell the policy. At the time of the insurance application, however, the insured and Binday expected that some insureds might or would sell their policy to an investor. *E.g.*, Trial Tr. at 349 (Binday "has investors that buy these policies and in this particular one, if you held it for two years, you get much more money as a fee than some of the other ones….").

The insurance companies did not lose money on the re-sold policies. They were paid the premiums that were due, and no insured lied about their age or health—the two critical factors in the decision to issue life insurance policies. There was no evidence the insurers returned the premiums they collected.

**BINDAY'S CHALLENGES TO RIGHT TO CONTROL FRAUD AND THE SUPREME COURT'S VINDICATION OF HIS POSITION**

**The Government Chooses Right to Control as its Strategy**

One month before Binday's 2013 trial, the government announced it would rely on the right to control theory because Binday misrepresented a future intent to possibly sell the life insurance policies he procured for clients. *Binday*, No. 12-152 (S.D.N.Y.) Doc. 237 at 2-3. Binday argued that there were "fundamental issues

regarding the viability of the government's newly embraced 'right to control' theory in light of the Supreme Court's decision in [*Skilling*], which limited the government's ability to pursue fraud charges based on the deprivation of 'intangible rights.'" *Binday*, No. 12-152, Doc. 233 at 29 n.9.  This Court did not expressly address *Skilling*'s impact on the right to control theory.  *Id*. Doc. 243 at 6-11.

This Court gave the jury a "right to control" instruction: "[A] person can also be deprived of money or property when he is deprived of the ability to make an informed economic decision about what to do with his money or property. We referred to that as being deprived of the right to control money or property." *Binday*, No. 12-152 (S.D.N.Y.), Tr. at 1579.

The jury convicted Binday.

**The Second Circuit Affirms**

On direct appeal, Binday argued that the facts of his case did not fall within conduct proscribed by the Second Circuit's law of right to control fraud.  *Binday*, No. 14-2809, Doc. 93, at 25 *et seq*.  He pointed out that the right to control theory was rejected by the Ninth Circuit in *United States v. Bruchhausen*, 977 F.2d 464 (9th Cir. 1992).  *Id.*, Doc. 136 at 3-4.

On October 26, 2015, the Second Circuit affirmed Binday's right to control conviction.  *Binday*, 804 F.3d 558, 570 (2d Cir. 2015).

Binday filed a petition for rehearing *en banc* on November 10, 2015, arguing that the Supreme Court in *Skilling* had rejected the Second Circuit's characterization of the right to control as property under the mail and wire fraud statutes.

On December 14, 2015, the Second Circuit denied Binday's petition for rehearing *en banc*.

**Binday Seeks Supreme Court Review**

Binday then petitioned the Supreme Court for review, framing the issue as follows: "Whether a defendant may be convicted of federal criminal fraud when the purported victim has suffered no loss of tangible property, but has instead only been deprived of the intangible 'right to control' with whom it does business." *Binday v. United States*, No. 15-1140 (U.S.) at i.

Binday's certiorari petition was denied on June 20, 2016.

**Binday Files a Section 2255 Motion Concerning the Right to Control**

Having exhausted his direct appeal challenges, and aware that the Second Circuit repeatedly reaffirmed the right to control theory of fraud (and the Supreme Court denied review in several of those cases),[1] on June 20, 2017, Binday filed a section 2255 motion for ineffective assistance of counsel because his trial attorney misstated the right to control standard. *Binday v. United States*, No. 17-cv-4723 (S.D.N.Y.) Doc. 1. He reaffirmed his challenge to right to control fraud:

> Mr. Binday continues to assert that the right to control theory is inconsistent with United States Supreme Court precedent, including *Skilling* and *Cleveland*, both of which rejected the "right to control" as proof of the property element of fraud. … By raising [trial counsel's] misunderstanding of the Second Circuit precedent discussing the right to control theory, Mr. Binday expressly does not waive his right to re-assert his objection to the right to control theory in a future proper forum—particularly as a claim of actual innocence in a petition for writ of habeas corpus.

---

[1]    For example: *United States v. Finazzo*, 850 F.3d 94 (2d Cir. 2017); *United States v. O'Garro*, 700 F. App'x 52 (2d Cir. 2017); *United States v. Viloski*, 557 F. App'x 28 (2d Cir. 2014), *cert. denied*, 135 S.Ct. 1698 (2015).

*Binday*, No. 12-cr-152, Doc. 446 at 5-6.

This Court denied Binday's motion and a certificate of appealability. *Binday*, No. 12-cr-152, Doc. 448. Binday asked the Second Circuit for a certificate of appealability, which it denied. *Id.* Doc. 457.

**Binday's Second Certiorari Petition Seeking Right to Control Review**

On August 27, 2019, Binday again petitioned the Supreme Court for review in which he raised the ineffective assistance and right to control contentions. *Binday v. United States*, No. 19-273 (S.Ct.), Cert. Petition at ii. He did so because the Supreme Court had granted review in *Kelly*, a Third Circuit decision that affirmed convictions based in part on the right to control theory. *Id.*[2]

**Binday's *Amicus* Briefs Challenging Right to Control Fraud**

Binday filed amicus briefs in *Kelly* and in *Aldissi v. United States*, No. 19-5805 (S. Ct.), in which he argued that right to control fraud was inconsistent with Supreme Court precedent and unconstitutional.

The Supreme Court did not grant Binday's certiorari petition, but it did reverse the convictions in *Kelly*. *Kelly v. United States*, 140 S. Ct. 1565 (2020).

**Binday Files a Section 2255 Motion Based on *Kelly***

Binday then filed a section 2255 motion (and a 2241 motion) in this Court arguing that *Kelly* undermined his conviction because his alleged scheme was to *buy* and pay full price for the insurance policies at issue, and any incidental costs

---

[2]    Binday explained in his certiorari petition that "*Kelly* will address the legitimacy of the right to control theory. Binday may thus raise the issue in this petition because it will be 'squarely presented and fully briefed. It is an important, recurring issue and is properly raised in another petition for certiorari. . . .' *See Carlson v. Green*, 446 U.S. 14, 17 n.2 (1980)." *Binday*, No. 19-273 (S.Ct.) Cert. Petition at ii.

from his breach of contract were not money he sought to obtain. *Binday*, No. 12-cr-152, Doc. 479 at 12, 29-30, 32. This Court forwarded the motion to the Second Circuit.

On October 12, 2021, the Second Circuit denied Binday leave to file a 2255 motion and denied Binday's section 2241 motion to vacate his conviction. *Binday* No. 21-1206, Doc. 46. It reasoned that *Kelly* did not reject right to control fraud, and so Binday was not "actually innocent." *Id*. at 1-2.

**Binday's Third Certiorari Petition Challenging Right to Control Fraud**

On March 12, 2022, Binday filed a petition for certiorari, again challenging right to control fraud.

On September 21, 2022, the government filed a memorandum of non-opposition, saying that "the Court's resolution of the questions presented in *Ciminelli* and *Jones* [*v. Hendrix*, No. 21-857] may affect the judgment of the court of appeals below," and the Court should dispose of Binday's petition in accordance with its decisions in those cases. *Binday v. United States*, No. 21-1241 (S. Ct.), Memorandum of the United States at 2.

**The Supreme Court Grants Binday's Petition, Vacates, and Remands**

On May 22, 2023, eleven days after it reversed the convictions in *Ciminelli*, the Supreme Court granted Binday's petition, vacated the Second Circuit's order denying Binday authorization to file a 2255 motion, and remanded "for further consideration in light of *Ciminelli*." *Binday*, 21-1206 (2d Cir.) Doc. 57.

**Second Circuit Proceedings After Remand**

On July 18, 2023, on remand from the Supreme Court, the Second Circuit issued an order restoring jurisdiction to the Second Circuit and recalled the mandate in the captioned case (that is, the First 2255 Motion). *Binday*, No. 17-cv-

4723, Doc. 19; *see Binday*, 21-1206 (2d Cir.) Docs. 109, 110, and 111.

In the Second Circuit, Binday argued that (a) the government waived any claim Binday's second-in-time 2255 motion was be barred by section 2255(h) because it conceded *Ciminelli* would control the outcome of his case; (2) Binday's post-*Ciminelli* 2255 motion would not be "second or successive" within the meaning of section 2255(h) because that hurdle does not apply to people, like Binday, who raised his challenges on direct appeal; and (3) Binday made a prima facie showing that *Ciminelli* is a new rule of constitutional law retroactive to cases on collateral review. *Binday*, No. 21-1206, Doc. 115-1.

On November 3, 2023, Binday filed a letter in response to a Rule 60 motion filed by co-defendant Kevin Kergil. In that letter, he stated that the Second Circuit would be deciding whether *Ciminelli* was retroactive and whether Binday's request to file a second 2255 motion was "second or successive." *Binday*, No. 12-cr-00152, Doc. 507.

On May 6, 2024, the Second Circuit denied Binday authorization to file a 2255 motion because he previously filed one, and it decided that *Ciminelli* applies only prospectively.

On Monday, May 9, 2024, Binday advised this Court that he would be filing a petition for a writ of certiorari to the Supreme Court because the Second Circuit erred in its analysis. He advised the Court that, "[w]e also will be filing a FRCP Rule 60 motion in this Court to revisit the Court's denial of Mr. Binday's first-in-time 2255 motion. That Rule 60 motion is authorized by Supreme Court caselaw and likely will not be controlled by the Second Circuit's recent order." *Binday*, 12-cr-00152, Doc. 510.

**Litigation Pending in the Supreme Court**

On June 7, 2024, Binday filed a petition for certiorari raising two issues: (1)

whether *Ciminelli* was a retroactive constitutional decision and (2) whether Binday's proposed second in time 2255 motion was "second or successive" within the meaning of section 2255(h).  In his petition, Binday explained that there were two cases pending review in the Supreme Court that were relevant to the first issue he raised: *Kousisis v. United States*, No. 23-909, and *Porat v. United States*, No. 23-832. Those two cases challenged Third Circuit rulings upholding the use of "fraudulent inducement" and other contract related principles to satisfy the property element. Both petitions raised constitutional concerns about the Third Circuit's analysis.

The *Kousisis* petition raised the questions whether fraudulently inducing a commercial exchange and whether any contract rights may satisfy the property element of federal fraud.  The *Porat* petition asked whether "deception to induce a commercial exchange can constitute mail or wire fraud."  *Porat*, Petition for a Writ of Certiorari, No. 23-832.

On June 17, 2024, the Supreme Court granted certiorari in *Kousisis*.  Order List (06/17/2024) (supremecourt.gov). (It did not rule on Porat's petition and thus may be holding it pending decision in *Kousisis*.)  On the same day, the government waived its right to respond to Binday's petition, which may signal the government's belief that it cannot defend the May 6 Order or its belief that the decision in *Kousisis* may affect Binday.  (The government similarly waived its right to respond to Binday's petition in 2022, then conceded that *Ciminelli* might affect the Second Circuit's judgment, and, as noted, the Supreme Court granted Binday's petition.)

The *Kousisis* petition raised broad questions about regulatory and contract rights in fraud cases. A Supreme Court decision in *Kousisis* that reaffirms the Supreme Court's rejection of contract principles (including fraudulent inducement of contract) as property under the fraud statutes would be significant to Binday for

several reasons.

First, such a decision may negate the May 6 Order, especially if it clarifies that *Ciminelli* and/or *Kousisis* were constitutionally based decisions.  Second, it would provide further support for Binday's argument below that this Court lacked jurisdiction to enter the judgment denying the First 2255 Motion.  Third, it would support Binday's contention that extraordinary circumstances exist to vacate the Court's denial of Binday's First 2255 Motion.  Fourth, it would demonstrate that the Second Circuit erred when it denied Binday authorization to file a second-in-time 2255 motion.

The ongoing litigation leaves some legal questions undecided; however, to protect his ability to have his arguments judged on their merits, Binday files his Rule 60 motion now.

## **ARGUMENT**

## **BINDAY IS ENTITLED TO RELIEF FROM THE DENIAL OF HIS FIRST 2255 MOTION**

Federal Rule of Civil Procedure 60 authorizes a person who has been denied relief under section 2255 to file a motion to vacate the judgment when (1) the judgment was the result of a "mistake, inadvertence, surprise, or excusable neglect"; (2) there is newly discovered evidence; (3) an opposing party engaged in misconduct, misrepresentation, or fraud; (4) the judgment is void; (5) the judgment has been satisfied "or applying it prospectively is no longer equitable"; (6) "any other reason that justifies relief."  FRCP 60(b).  All motions must be made within a reasonable time, and the first three may be raised within one year from the judgment or proceeding.  FRCP 60(c)(1).  Subsection (6) is applicable when the others are unavailable.  *Kemp v. United States*, 596 U.S. 528, 533 (2022).

A Rule 60 motion may be filed at any time, even while an appeal is pending. Thus, this Court may rule on Binday's Rule 60 motion even if the Second Circuit has not issued its mandate in the captioned case. *See Stone v. I.N.S.*, 514 U.S. 386, 401 (1995) ("the pendency of an appeal does not affect the district court's power to grant Rule 60 relief").

**This Court Lacked Jurisdiction to Deny Binday's First 2255 Motion**

Rule 60(b)(4) supports granting Binday's Rule 60 motion. When a court does not have jurisdiction to enter a judgment, that judgment is void. *See Wesco Prod. Co. v. Alloy Auto. Co*., 880 F.2d 981, 984 (7th Cir. 1989) ("A void judgment for purposes of Rule 60(b)(4) is generally defined as a judgment entered by a court without jurisdiction or in contravention of due process of law.") A due process violation is not a requirement; a judgment is void if the court did not act "within the powers granted to it by the law, … [it is] beyond the scope of authority granted to it by its creators, … [or] "the rendering court was powerless to enter it." *United States v. Indoor Cultivation Equip. from High Tech Indoor Garden Supply*, 55 F.3d 1311, 1316 (7th Cir. 1995) (citations omitted). A "void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010). It applies "where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Id.* at 271. When a court lacks jurisdiction "of the subject matter, or of the parties," then the judgment is void. *Grace v. Bank Leumi Tr. Co. of NY*, 443 F.3d 180, 193 (2d Cir. 2006)

The decision in *Ciminelli* voided the judgment in Binday's First 2255 Motion for the same reason that *Ciminelli* also abrogated the Second Circuit's opinion affirming Binday's conviction: both were based on an erroneous

description of the fraud statutes. Binday raised a challenge to right to control fraud in his First 2255 Motion while arguing that his lawyer misapprehended right to control law by arguing the insurance companies lost no money. This Court disagreed that was the gravamen of the defense and denied with Binday's motion, but the validity of right to control fraud—depriving the insurers of information—was the foundation of that judgment. As this Court noted in its order denying the motion, one of Binday's defenses at trial was that he had no intent to defraud because the insurers were not, in fact, deceived. *Binday*, 12-cr-00152, Doc. 448 at 5-6. In other words, Binday argued the insurers were not denied their right to make economic decisions on complete information, and the jury was told it could convict if it disbelieved that defense.

Given the defects of right to control fraud, this Court did not have a legal basis to deny Binday's First 2255 Motion; it had no jurisdiction to conclude that Binday was properly convicted of right to control fraud. The right to control theory represents a judicial expansion of "federal jurisdiction without statutory authorization." *Ciminelli*, 598 U.S. at 315. It criminalizes contract breaches and torts in an "almost limitless variety of deceptive actions." *Id*. By expanding the reach of the wire fraud statute to Binday's alleged deceptive statements, the Court exercised jurisdiction where it had none. *See also United States v. Sadler*, 750 F.3d 585 (6th Cir. 2014) (right to control theory represented "a sweeping expansion of federal criminal jurisdiction").[3]

Although Binday could not, under prevailing Second Circuit law, directly

---

[3]    Binday argues that the right to control theory was a judicially constructed crime over which this and other courts had no jurisdiction. That is different from arguing particular conduct did not constitute an offense. *See United States v. Aquart*, 92 F.4th 77, 90 (2d Cir. 2024).

attack right to control fraud in his First 2255 Motion, since he challenged it on
direct appeal, *see United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001) ("It is well
established that a § 2255 petition cannot be used to 'relitigate questions which
were raised and considered on direct appeal'" (citation omitted)), he nevertheless
did so within the bounds of professionalism:

> Mr. Binday continues to assert that that the right to control
> theory is inconsistent with United States Supreme Court
> precedent, including *Skilling* and *Cleveland*, both of which
> rejected the "right to control" as proof of the property
> element of fraud. … By raising [trial counsel's]
> misunderstanding of the Second Circuit precedent
> discussing the right to control theory, Mr. Binday
> expressly does not waive his right to re-assert his objection
> to the right to control theory in a future proper forum—
> particularly as a claim of actual innocence in a petition for
> writ of habeas corpus.

*Binday v. United States*, No. 12-cr-152 (SDNY) Doc. 446 at 5-6.

**Extraordinary Circumstances Justify Reopening Binday's First 2255 Motion**

If Rule 60(b)(4) does not apply because of a decision by the Supreme Court
in *Kousisis*, then Binday is nevertheless entitled to relief under Rule 60(b)(6)
because extraordinary circumstances justify reopening the judgment in the First
2255 Motion. "In determining whether extraordinary circumstances are present, a
court may consider a wide range of factors. These may include, in an appropriate
case, 'the risk of injustice to the parties' and 'the risk of undermining the public's
confidence in the judicial process.'" *Buck v. Davis*, 580 U.S. 100, 123 (2017).

In *Buck*, the Supreme Court held that imposing a sentence based on an

unconstitutional consideration (race) was an extraordinary circumstance because it injures "not just the defendant, but 'the law as an institution,… the community at large, and … the democratic ideal reflected in the processes of our courts." *Id*. at 124. Similarly, when a conviction "is not authorized by substantive law … '[t]here is little societal interest in permitting the criminal process to rest at a point where it ought properly never to repose.'" *Welch v. United States*, 578 U.S. 120, 131 (2016) (citation omitted).

Because of now-invalidated Second Circuit law, this Court entered an incorrect judgment in response to Binday's First 2255 Motion: it concluded that Binday's counsel was effective even though there was no crime charged. "We think it particularly appropriate for the district court to entertain a Rule 60(b)(6) motion on grounds of a retroactive change in the law in the context of a habeas corpus proceeding, in which '[c]onventional notions of finality of litigation have no place.'" *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986) (quoting *Sanders v. United States*, 373 U.S. 1, 8 (1963)).

Rule 60(b)(6) "requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *Phelps v. Alameida*, 569 F.3d 1120, 1133 (9th Cir. 2009) (citing *Stokes v. Williams,* 475 F.3d 732, 736 (6th Cir. 2007)); *see Bynoe v. Baca*, 966 F.3d 972, 983 (9th Cir. 2020) ("we have distilled the extraordinary-circumstances requirement into six factors").

To the extent the Rule 60(b)(6) motion should attack the "integrity of the previous habeas proceeding rather than the underlying criminal conviction," *Harris v. United States*, 367 F.3d 74, 77 (2d Cir. 2004), the Court's use of an improper legal foundation to deny Binday relief certainly does so. An unsound legal theory, like right to control fraud, lacks integrity—that is, "[f]reedom from

corruption or impurity; soundness; purity." INTEGRITY, Black's Law Dictionary (11th ed. 2019). Applying an unsound theory to reject a section 2255 motion lacks integrity because it validates governmental overreach and the judicial errors that accept the government's tactics; it tells the public that the government wins even when the Supreme Court abrogates the legal theory used to convict someone.

Binday asks this Court to vacate its denial of his First 2255 Motion because the Second Circuit rulings on the meaning of property were always wrong, and this Court could not properly assess the section 2255 motion. In other words, by this motion, Binday asks the Court to vacate its dismissal of his First 2255 Motion and then take up the merits of that motion. *See Cobb v. United States*, No. 04-CR-203 (ARR), 2019 WL 2607002, at *3 (E.D.N.Y. Jan. 11, 2019) (granting Rule 60(b)(6) motion because of the court's mistake: "[T]he petition included a meritorious argument for vacating his sentence, but the argument was overlooked by both the government and the court. In Mr. Cobb's case, I have no doubt that relief is appropriate to achieve justice.").

## The Courts' Continued Legal Errors Support Binday's Rule 60 Motion

Finally, the government may contend that courts in this circuit made a series of legal "mistakes," and this Court should consider Binday's Rule 60 motion under subsection (b)(1). Rule 60(b)(1) applies to "legal errors made by judges," *Kemp*, 142 S. Ct. at 1862. The Supreme Court in *Kemp* did not delineate whether a legal "mistake" included a judicial error extending from 1984 through 2023, like "right to control fraud." Instead, *Kemp* dealt with a legal mistake about the timing of a filing. *See Kemp v. United States*, No. 20-10958, 2021 WL 2102860 (11th Cir. May 25, 2021) (Kemp argued that "his petition was timely under Supreme Court Rule 13.3"), *aff'd*, 596 U.S. 528 (2022).

In her concurrence, Justice Sotomayor explained that the holding in *Kemp*

16

did not cast "doubt on the availability of Rule 60(b)(6) to reopen a judgment in extraordinary circumstances, including a change in controlling law." *Kemp*, 596 U.S. at 540 (2022) (Sotomayor, J. concurring) (citing *Buck v. Davis*, 580 U.S. 100, 126 (2017)). It thus appears that a change in controlling law may fit better within Rule 60(b)(6) than Rule 60(b)(1).

In any event, if Rule 60(b)(1) is applied to Binday, then he is entitled to relief: Courts in this circuit were mistaken for decades about the meaning of "property." Intangible property rights such as the right to control are not, and never were, property. Those were significant legal errors that led to an illegal conviction and thus justify relief under Rule 60(b)(1). *See Colucci v. Beth Israel Med. Ctr.*, 531 F. App'x 118, 120 (2d Cir. 2013) ("Rule 60 (b)(1) allows for relief from judgment in cases of mistake, including legal errors made by the District Court." (citation omitted)).

## **Binday's Motion is Timely**

Rule 60(c)(1) provides that motions seeking relief from a judgment must be made in a reasonable time and, for Rule 60(b)(1), (2), and (3) "no more than a year after the entry of the judgment or order or the date of the proceeding." The one-year period for the first three subsections begins to run on the date the error is identified. *See Buck*, 580 U.S. at 126 (Supreme Court measured the time a petitioner had to file a Rule 60 motion to challenge the denial of his habeas petition from the date of two Supreme Court cases that had corrected the law, not from the date of his 1995 conviction or from his 2004 habeas petition); *Cobb*, 2019 WL 2607002, at *3 (one-year period was measured from time court realized it overlooked petitioner's meritorious argument).

Binday's motion pursuant to Rule 60(b)(4) or (6) was made within a reasonable time: that is, about one year after *Ciminelli* and about one month after

the Second Circuit ruled on his motion for authorization to file a second 2255 motion.

The reasonableness of the timing of a Rule 60 "is to be determined based on 'the particular circumstances of the case,' taking into account the reason for any delay, the possible prejudice to the non-moving party, and the interests of finality." *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 864 F.3d 172, 182 (2d Cir. 2017). Rule 60(b) is meant to be "broadly construed to do substantial justice," while respecting that "final judgments should not be lightly reopened." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986). "Courts have been exceedingly lenient in defining the term 'reasonable time,' with regard to voidness challenges. In fact, it has been oft-stated that, for all intents and purposes, a motion to vacate a default judgment as void 'may be made at any time.'" *Grace v. Bank Leumi Tr. Co. of NY*, 443 F.3d 180, 190 (2d Cir. 2006) (cleaned up) (five-year delay in filing motion not untimely).

Binday waited to file his notice of a Rule 60 motion until the Supreme Court decided *Ciminelli* on May 11, 2023. That was reasonable because, before that decision, Binday had been unable to convince the Second Circuit to reconsider right to control fraud. He then notified this Court in November 2023 that Rule 60 applied to the First 2255 Motion and then waited six months for the Second Circuit to decide his motion to file a second-in-time 2255 motion—a six-month delay for which he bore no responsibility. Upon receipt of the Second Circuit's May 6 Order, Binday almost immediately advised this Court that he would file a Rule 60 motion and also seek Supreme Court review.

The government has not been prejudiced. It has been involved in, and responded to, all of Binday's arguments since he was convicted in 2015. Binday continues to serve his prison sentence (now on home confinement with significant restrictions on his freedom) and thus cannot complain that Binday has escaped

punishment.

Binday's Rule 60(b)(1) motion is timely for several reasons.  First, the legal errors began with the Second Circuit's adoption of right to control fraud in 1984, but did not end with *Ciminelli*, since the Second Circuit failed to implement its holding and consigned the decision to one of mere "interpretation."  *See* May 6 Order at 2.  Thus, the legal mistake continues.

Second, Binday effectively filed a Rule 60 motion within a year of the *Ciminelli* decision on May 11, 2023 when he filed two letters, dated November 3, 2023 and May 10, 2024, indicating that Rule 60 applied to his First 2255 Motion. 12-cr-152, Docs. 507, 510. Those letters were in writing and indicated that Binday sought to vacate the judgment in his First 2255 motion because of the ruling in *Ciminelli*.  That complied with FRCP 7(b). "The purpose of Rule 7 is to provide notice to the court and the opposing party." *Elustra v. Mineo*, 595 F.3d 699, 708 (7th Cir. 2010) (approving simple notice objecting to settlement and asking to vacate order and reinstate case).  The government did not object.

Once the adversary has notice of the basis for seeking relief, Rule 7 is satisfied.  The time between that notice and Binday's arguments here was caused by the delay in the Second Circuit's consideration of Binday's motion for authorization.  *See Rippey v. Utah*, 783 F. App'x 823, 824 (10th Cir. 2019) (filing a notice of intent to file a Rule 60 motion is effective); *see also Smith v. Barry*, 502 U.S. 244, 248-49 (1992) ("the notice afforded by a document, not the litigant's motivation in filing it, determines the document's sufficiency as a notice of appeal. If a document filed within the time specified by Rule 4 gives the notice required by Rule 3, it is effective as a notice of appeal"); *In re Houston Oil Tr. Sec. Litig. MDL-625*, 1993 WL 117764 n. 9, 990 F.2d 625 (5th Cir. 1993) (Rule 60 motion timely when lawyer "notified the court, by telephone and by letter, of his intention to file the motion and the grounds in support of it well within the time for appeal");

19

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1276 (11th Cir. 2008) (motion was timely when party notified court of its intention to file Rule 60(b) motion).

Binday's notice of his Rule 60 motion, this Court's response that Binday should notify it "if the Supreme Court grants your cert petition," 12-cr-152, Doc. 510, and the government's failure to object, all constitute sufficient notice to satisfy Rule 7 and Rule 60(b)(1)'s one year limit.

## <u>CONCLUSION</u>

Michael Binday respectfully requests that the Court grant his Rule 60 motion.

Respectfully Submitted,

_____
David W. Shapiro
The Norton Law Firm
dshapiro@nortonlaw.com