No. 23-

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

IN THE

# Supreme Court of the United States

———❖———

MICHAEL BINDAY,

*Petitioner,*

*v.*

UNITED STATES,

*Respondent.*

———————————

ON PETITION FOR A WRIT OF CERTIORARI TO THE
UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

## PETITION FOR A WRIT OF CERTIORARI

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

DAVID W. SHAPIRO
  *Counsel of Record*
JANELLE SAMPANA
THE NORTON LAW FIRM
299 Third Street, Suite 200
Oakland, CA 94607
(510) 906-4906
dshapiro@nortonlaw.com

116853



COUNSEL PRESS

(800) 274-3321 • (800) 359-6859

*i*

## QUESTIONS PRESENTED

Whether this Court's decision in *Ciminelli v. United States*, 598 U.S. 306 (2023), was a constitutional determination that placed particular conduct or persons covered by the fraud statutes beyond the State's power to punish and thus must be given retroactive effect.

When a person has challenged a judicial construction of a criminal statute at trial, on direct appeal, and in a 2255 motion as unconstitutional, and lower courts reject his contentions, is he foreclosed by section 2255(h) from raising the same issue in a later in time motion after this Court vindicates his position?

*ii*

## PARTIES TO THE PROCEEDING

Petitioner Michael Binday was a defendant in the district court and a petitioner in the Second Circuit.

The respondent is the United States of America.

*iii*

## RELATED PROCEEDINGS

*United States v. Binday*, 12 CR. 152 (CM) (SDNY).

*United States v. Binday*, 804 F.3d 558 (2d Cir. 2015), *cert. denied*, 579 U.S. 917 (2016), *abrogated by Ciminelli v. United States*, 598 U.S. 306 (2023).

*Binday v. United States*, 2018 WL 2731269 (S.D.N.Y. 2018), *certificate of appealability denied*, 2019 WL 302079 (2d Cir. Jan. 15, 2019), *cert. denied*, 140. S. Ct. 1105 (2020).

*Binday v. United States*, No. 21-1206 (2d Cir. 2021) (denying authorization to file 2255/2241 motions), *cert. granted, judgment vacated, and remanded, Binday v. United States*, 143 S. Ct. 2491 (2023).

*iv*

## TABLE OF CONTENTS

*Page*

QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . .i

PARTIES TO THE PROCEEDING . . . . . . . . . . . . . . . ii

RELATED PROCEEDINGS . . . . . . . . . . . . . . . . . . . . .iii

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . .iv

TABLE OF APPENDICES . . . . . . . . . . . . . . . . . . . . . vii

TABLE OF CITED AUTHORITIES . . . . . . . . . . . . .viii

PETITION FOR A WRIT OF CERTIORARI. . . . . . . .1

OPINION BELOW . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

STATUTORY PROVISIONS INVOLVED . . . . . . . . . .1

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . .4

      FACTS RELEVANT TO THIS PETITION. . . .4

      BINDAY'S CHALLENGES TO RIGHT TO
      CONTROL FRAUD AND THE SUPREME
      COURT'S VINDICATION OF HIS
      POSITION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*v*

*Table of Contents*

*Page*

The Government Chooses Right to Control as its Strategy . . . . . . . . . . . . . . . . . .5

The Second Circuit Affirms. . . . . . . . . . . . .6

Binday Seeks Supreme Court Review . . . . .6

Binday Files a Section 2255 Motion Concerning the Right to Control. . . . . . . . . .7

Binday's Second Certiorari Petition Seeking Right to Control Review . . . . . . . . .7

Binday's *Amicus* Briefs Challenging Right to Control Fraud. . . . . . . . . . . . . . . . .8

Binday Files a Section 2255 Motion Based on *Kelly* . . . . . . . . . . . . . . . . . . . . . . . .8

Binday's Third Certiorari Petition Challenging Right to Control Fraud . . . . . .9

The Supreme Court Grants Binday's Petition, Vacates, and Remands . . . . . . . . . .9

Second Circuit Proceedings Underlying this Petition . . . . . . . . . . . . . . . . . . . . . . . . .10

REASONS FOR GRANTING THE PETITION . . . . .10

*vi*

*Table of Contents*

*Page*

I. THE SECOND CIRCUIT'S ORDER
THAT *CIMINELLI* APPLIES ONLY
PROSPECTIVELY IS INCONSISTENT
WITH EVERY PRECEDENT OF THIS
COURT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

II. THE SECOND CIRCUIT'S TEST
FOR "SECOND OR SUCCESSIVE"
CONFLICTS WITH THIS COURT'S
RULINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

The Competing Constructions of
Second or Successive . . . . . . . . . . . . . . . . . .25

1. The Second Circuit Ignored The
Criteria for "Second or Successive"
Described in *Banister v. Davis* . . . . . .26

2. The Second Circuit's Test Damages
Habeas Practice . . . . . . . . . . . . . . . . . . .33

3. The Second Circuit's Test
Impedes Finality And Deterrence
Interests . . . . . . . . . . . . . . . . . . . . . . . . .34

III. THE QUESTIONS PRESENTED ARE
CRITICALLY IMPORTANT AND THIS
CASE IS IDEAL TO RESOLVE THEM . . . . .35

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

*vii*

## TABLE OF APPENDICES

*Page*

APPENDIX A — ORDER OF THE UNITED
STATES COURT OF APPEALS FOR THE
SECOND CIRCUIT, FILED MAY 6, 2024 . . . . . . .1a

APPENDIX B — ORDER OF THE
UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT, FILED
OCTOBER 12, 2021 . . . . . . . . . . . . . . . . . . . . . . . . .5a

APPENDIX C — JUDGMENT OF THE
UNITED STATES SUPREME COURT,
FILED JUNE 23, 2023 . . . . . . . . . . . . . . . . . . . . . . .8a

*viii*

## TABLE OF CITED AUTHORITIES

*Page*

**CASES**

*Aldissi v. United States,*
   No. 19-5805 (S. Ct.) . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Alfaro v. United States,*
   2024 WL 2194852 (W.D. Tex. May 14, 2024) . . . . . .11

*Banister v. Davis,*
   590 U.S. 504 (2020). . . . . . . . . . . . . . . . . . .26, 27, 28, 32

*Bousley v. United States,*
   523 U.S. 614 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Castro v. United States,*
   540 U.S. 375 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . .25

*Cephas v. Nash,*
   328 F.3d 98 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . .31

*Ciminelli v. United States,*
   598 U.S. 306 (2023),
   143 S. Ct. 1121 (2023). . . .2, 3, 5, 9-15, 18-21, 23, 26, 34-36

*Cleveland v. United States,*
   531 U.S. 12 (2000). . . . . . . . . . . . . . . . . . . . . . . . . .4, 15, 17

*Davis v. United States,*
   417 U.S. 333 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . .31, 32

*ix*

*Cited Authorities*

*Page*

*Dunn v. United States,*
    442 U.S. 100 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*Edward J. DeBartolo Corp. v.*
    *Fla. Gulf Coast Bldg. & Const. Trades Council,*
    485 U.S. 568 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Edwards v. Vannoy,*
    593 U.S. 255 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Fasulo v. United States,*
    272 U.S. 620 (1926) . . . . . . . . . . . . . . . . . . . . . . . . . .2, 15

*Ford v. Wainwright,*
    477 U.S. 399 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

*Harper v. Virginia Dep't of Tax'n,*
    509 U.S. 86 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

*In re Jones,*
    54 F.4th 947 (6th Cir. 2022) . . . . . . . . . . . . . . . . . . . . .28

*In re Jones,*
    652 F.3d 603 (6th Cir. 2010) . . . . . . . . . . . . . . . . . . . . .29

*Ingber v. Enzor,*
    841 F.2d 450 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . .17

*Int'l CableTel Inc. v. Le Groupe Videotron Ltee,*
    978 F. Supp. 483 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . .23

*x*

*Cited Authorities*

*Page*

*Johnson v. United States,*
576 U.S. 591 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . .21, 22

*Johnson v. Wynder,*
408 F. App'x 616 (3d Cir. 2010) . . . . . . . . . . . . . . . . .29

*Jones v. Hendrix,*
8 F.4th 683 (8th Cir. 2021),
*aff'd*, 599 U.S. 465 (2023) . . . . . . . . . . . . . . . .30, 31, 32

*Jones v. Hendrix,*
No. 21-857 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Kelly v. United States,*
140 S. Ct. 1565 (2020). . . . . . . . . 8, 9, 15, 26, 30, 34, 35

*Kousisis v. United States,*
82 F.3d 230 (3d Cir. 2023),
*cert. filed*, No. 23-909 (S. Ct. 2023) . . . . . . . . . . .10, 23

*Magnuson v. United States,*
861 F.2d 166 (7th Cir. 1988). . . . . . . . . . . . . . . . . . . .17

*Magwood v. Patterson,*
561 U.S. 320 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . .27

*Martignoni v. United States,*
2011 WL 4834217 (S.D.N.Y. Oct. 12, 2011) . . . . . . . .17

*Mathis v. United States,*
579 U.S. 500 (2016) . . . . . . . . . . . . . . . . . . . . . . . . .18, 21

*xi*

*Cited Authorities*

                                                                *Page*

*McCormick v. United States,*
   500 U.S. 257 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*McDonnell v. United States,*
   579 U.S. 550 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*McNally v. United States,*
   483 U.S. 350 (1987) . . . . . . . . . . . . . . . . . 2, 4, 13-17, 23

*New Hampshire v. Maine,*
   532 U.S. 742 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*Panetti v. Quarterman,*
   551 U.S. 930 (2007) . . . . . . . . . . . . . . . . . . . . . 25,-29, 32

*Percoco v. United States,*
   598 U.S. 319 (2023) . . . . . . . . . . . . . . . . . . . . . . . . . .11, 23

*Porat v. United States,*
   76 F.3d 213 (3d Cir. 2023),
   *cert. filed*, No. 23-832 (S. Ct. 2023) . . . . .10, 11, 23, 35

*Prost v. Anderson,*
   636 F.3d 578 (10th Cir. 2011) . . . . . . . . . . . . . . . . . . .32

*Rehaif v. United States,*
   588 U.S 225 (2019) . . . . . . . . . . . . . . . . . . . . . . . . .20, 30

*Rodrigues v. United States,*
   2011 WL 529158 (D. Haw. 2011),
   *aff'd*, 678 F.3d 693 (9th Cir. 2012) . . . . . . . . . . . . . . .17

*xii*

*Cited Authorities*

*Page*

*Sanders v. United States,*
   373 U.S. 1 (1963) . . . . . . . . . . . . . . . . . . . .27, 28, 32, 36

*Schriro v. Summerlin,*
   542 U.S. 348 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Scott v. United States,*
   890 F.3d 1239 (11th Cir. 2018) . . . . . . . . . . . . . . . . . .29

*Skilling v. United States,*
   561 U.S. 358 (2010) . . . . . . . . . . . . . . . . . . . . . 4-6, 17, 34

*Slack v. McDaniel,*
   529 U.S. 473 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . .25

*Stewart v. Martinez-Villareal,*
   523 U.S. 637 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . .28

*Stewart v. United States,*
   646 F.3d 856 (11th Cir. 2011) . . . . . . . . . . . . . . . . . . .29

*Taylor v. United States,*
   495 U.S. 575 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . .21

*Turner v. United States,*
   693 F.3d 756 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . .17

*Tyler v. Cain,*
   533 U.S. 656 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . .22

*xiii*

*Cited Authorities*

*Page*

*United States v. Alpers,*
    338 U.S. 680 (1950)..............................16

*United States v. Bass,*
    404 U.S. 336 (1971)..............................16

*United States v. Bruchhausen,*
    977 F.2d 464 (9th Cir. 1992) ......................6

*United States v. Finazzo,*
    850 F.3d 94 (2d Cir. 2017) ........................7

*United States v. Full Play Grp., S.A.,*
    2023 WL 5672268 (E.D.N.Y. Sept. 1, 2023) .......11

*United States v. Lopez,*
    577 F.3d 1053 (9th Cir. 2009) ....................29

*United States v. Mitchell,*
    867 F.2d 1232 (9th Cir. 1989) ....................17

*United States v. Nordlicht,*
    2023 WL 4490615 (E.D.N.Y. 2023)...............23

*United States v. Peter,*
    310 F.3d 709 (11th Cir. 2002).....................17

*United States v. Resnick,*
    299 U.S. 207 (1936)..............................17

*xiv*

*Cited Authorities*

*Page*

*United States v. Richter,*
    796 F.3d 1173 (10th Cir. 2015) . . . . . . . . . . . . . . . . . . .23

*United States v. Sadler,*
    750 F.3d 585 (6th Cir. 2014) . . . . . . . . . . . . . . . . . . . . .16

*United States v. Sanin,*
    252 F.3d 79 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . .30

*United States v. Shelton,*
    848 F.2d 1485 (10th Cir. 1988) . . . . . . . . . . . . . . . . . . .17

*United States v. Small,*
    No. 24-46, Doc. 1 (2d Cir. 2023) . . . . . . . . . . . . . . . .23

*United States v. Viloski,*
    557 F. App'x 28 (2d Cir. 2014),
    *cert. denied*, 137 S. Ct. 1223 (2017) . . . . . . . . . . . . . . .7

*United States v. Wallach,*
    935 F.2d 445 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . .19

*Urinyi v. United States,*
    607 F.3d 318 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . .33

*Vu v. United States,*
    648 F.3d 111 (2d Cir. 2011) . . . . . . . . . . . . .26, 31, 34-36

*Washington v. United States,*
    868 F.3d 64 (2d Cir. 2017) . . . . . . . . . . . . . . . . . . .18, 21

*xv*

*Cited Authorities*

*Page*

*Welch v. United States,*
578 U.S. 120 (2016) . . . . . . . . . . . . . . . . . . . . . . .12, 21, 22

*Williams v. Taylor,*
529 U.S. 362 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . .28

*Wooden v. United States,*
142 S. Ct. 1063 (2022) . . . . . . . . . . . . . . . . . . . . . . . .16

**STATUTES, RULES AND REGULATIONS**

18 U.S.C. § 922(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

18 U.S.C. § 1341 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

18 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

18 U.S.C. § 1346 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

28 U.S.C. § 1254(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

28 U.S.C. § 2241 . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 31, 32

28 U.S.C. § 2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

28 U.S.C. § 2254(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

28 U.S.C. § 2255 . . . . . . . . . . . .1, 4,  7-11, 17, 25, 26, 28-33

28 U.S.C. § 2255(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

*xvi*

*Cited Authorities*

*Page*

28 U.S.C. § 2255(f)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

28 U.S.C. § 2255(h) . . . . . . . . . . . . . . . . . .9, 10, 25, 27, 36

Armed Career Criminal Act . . . . . . . . . . . . . . . . . . .18, 21

**OTHER AUTHORITIES**

1 W. Blackstone, Commentaries 69 (1765) . . . . . . . . . . .18

Brief for the United States, *Ciminelli v. United States*, No. 21-1170 . . . . . . . . . . . . . . . . . . . . . . . . .14, 19

CRIME, Black's Law Dictionary (11th ed. 2019) . . . . .16

Nuno Garoupa & Matteo Rizzolli, *Wrongful Convictions Do Lower Deterrence*, 168 J. Institutional & Theoretical Econ. 224 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

Richard A. Posner, *An Economic Approach to the Law of Evidence*, 51 Stan. L. Rev. 1477 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

1

## PETITION FOR A WRIT OF CERTIORARI

Petitioner Michael Binday respectfully petitions for a writ of certiorari to review the May 6, 2024 judgment of the United States Court of Appeals for the Second Circuit denying Binday's motion for leave to file a motion pursuant to 28 U.S.C. § 2255.

## OPINION BELOW

The Second Circuit's order denying Binday authorization to file a section 2255 motion, CM/ECF No. 155, *Binday v. United States*, No. 21-1206 (2d. Cir. May 6, 2024), is unpublished and is reproduced at Pet.App.1-4.

## JURISDICTION

The United States Court of Appeals for the Second Circuit issued the decision for which Binday seeks review on May 6, 2024. This Court has jurisdiction under 28 U.S.C. § 1254(1).

## STATUTORY PROVISIONS INVOLVED

The federal mail fraud statute, 18 U.S.C. § 1341, states in pertinent part that whoever uses the mails "for obtaining money or property by means of false or fraudulent pretenses" is guilty of mail fraud. The wire fraud statute, 18 U.S.C. § 1343, similarly states that whoever uses means of interstate communication "for obtaining money or property by means of false or fraudulent pretenses" is guilty of wire fraud.

2

## INTRODUCTION

Thirty-six years after this Court struck down as unconstitutional a judge-made constructive crime known as "honest services fraud," *McNally v. United States*, 483 U.S. 350 (1987), the Court in *Ciminelli* rejected another constructive crime superimposed by some lower courts on the fraud statutes: "right to control fraud." Honest services and right to control fraud each criminalized conduct that deprived a complainant of an intangible right associated with property ownership. Both of those "crimes" were unconstitutional because they were not adopted by Congress, they were judicially constructed offenses, they intruded in areas reserved for state regulation, they were amorphous in their description by lower courts and thus their application to particular people. In short, they denied people like Michael Binday fair notice and thus due process.

In *McNally*, the Court explained that when Congress used the word "property" in the fraud statute in 1909, it meant the "common understanding" of schemes to obtain money or property from victims through false representations. Congress did not adopt a statute to authorize the government to "set[ ] standards of disclosure," *id.* at 360—whether for employees who owed some duty to employers or for businesspeople negotiating contracts. "There are no constructive offenses; and before one can be punished, it must be shown that his case is plainly within the statute." *Id.* (citing *Fasulo v. United States*, 272 U.S. 620, 629 (1926)).

In 2023, in *Ciminelli*, this Court rejected right to control fraud for the same reasons: the theory "vastly expands federal jurisdiction without statutory

3

authorization . . . [b]ecause the theory treats mere information as the protected interest, [and thus] almost any deceptive act could be criminal. . . . The theory thus makes a federal crime of an almost limitless variety of deceptive actions traditionally left to state contract and tort law." 598 U.S. at 315. The right to control was not "plainly within the statute" and putting it there violated the separation of federal and state authority (federalism), the rules against constructive offenses and lenity, and criminalized contract breaches. Thus, this Court rejected right to control fraud for exactly the same reasons it rejected honest services fraud in 1987: it was not part of the statute passed by Congress over 100 years ago.

From the start, Binday challenged right to control fraud. He did what courts have ruled someone must do to preserve constitutional claims by raising his arguments at every step of his prosecution: he raised a claim at trial, on appeal, in a rehearing *en banc* petition in the Second Circuit, in his first certiorari petition on direct appeal, in two *amicus* briefs filed in this Court, in his second certiorari petition, multiple times in the Second Circuit, and then in his third certiorari petition soon after the *Ciminelli* defendants filed their petition. Every point Binday made in his filings appeared in this Court's *Ciminelli* opinion.

Two weeks after it decided *Ciminelli*, this Court granted Binday's petition for certiorari and remanded the matter to the Second Circuit for proceedings consistent with this Court's decision.

Despite the unmistakable constitutional bases for the Court's ruling in *Ciminelli* (and in its predecessors—

4

*McNally*, *Skilling v. United States*, 561 U.S. 358, 400 (2010), and *Cleveland v. United States*, 531 U.S. 12 (2000)), the Second Circuit refused to let Binday file a 28 U.S.C. § 2255 motion to challenge his conviction, leaving Binday convicted of a non-crime and punishing him for the lower court's own repeated legal errors.

## STATEMENT OF THE CASE

### FACTS RELEVANT TO THIS PETITION

Binday, a life insurance broker, was convicted of mail and wire fraud under the Second Circuit's expansive "right to control" theory. The government alleged Binday deprived insurance companies of information they considered valuable by signing an application that represented the applicant had no intent to sell the policy. At the time of the insurance application, however, the insured and Binday expected that some insureds might or would sell their policy to an investor. Trial Tr. at 349 (Binday "has investors that buy these policies and in this particular one, if you held it for two years, you get much more money as a fee than some of the other ones. . . .").

The insurance companies were paid the premiums they were due; no insured lied about their age or health—the two critical factors in the decision to issue life insurance policies. There was no evidence the insurers returned the premiums they collected.

The Second Circuit held that Binday committed right to control fraud because a "cognizable harm occurs where the defendant's scheme denies the victim the right to control its assets by depriving it of information necessary

5

to make discretionary economic decisions." *Ciminelli*, 598 U.S. at 313 (quoting *Binday*) (cleaned up).

## BINDAY'S CHALLENGES TO RIGHT TO CONTROL FRAUD AND THE SUPREME COURT'S VINDICATION OF HIS POSITION

### The Government Chooses Right to Control as its Strategy

One month before Binday's 2013 trial, the government announced it would rely on the right to control theory because Binday misrepresented a future intent to possibly sell the life insurance policies he procured for clients. *Binday*, No. 12-152 (S.D.N.Y.) Doc. 237 at 2-3. Binday argued that there were "fundamental issues regarding the viability of the government's newly embraced 'right to control' theory in light of the Supreme Court's decision in [*Skilling*], which limited the government's ability to pursue fraud charges based on the deprivation of 'intangible rights.'" *Binday*, No. 12-152, Doc. 233 at 29 n.9. The district court did not address *Skilling*'s impact on the right to control theory. *Id.* Doc. 243 at 6-11.

The district court gave the jury a "right to control" instruction: "[A] person can also be deprived of money or property when he is deprived of the ability to make an informed economic decision about what to do with his money or property. We referred to that as being deprived of the right to control money or property." *Binday*, No. 12-152 (S.D.N.Y.), Tr. at 1579.

The jury convicted Binday.

6

### The Second Circuit Affirms

On direct appeal, Binday argued that the facts of his case did not fall within conduct proscribed by the Second Circuit's law on the right to control. *Binday*, No. 14-2809, Doc. 93 at 25 *et seq.* He pointed out that the right to control theory was rejected by the Ninth Circuit in *United States v. Bruchhausen*, 977 F.2d 464 (9th Cir. 1992). *Id.*, Doc. 136 at 3-4.

On October 26, 2015, the Second Circuit affirmed Binday's right to control conviction. *Binday*, 804 F.3d at 570.

Binday filed a petition for rehearing *en banc* on November 10, 2015, arguing that the Supreme Court in *Skilling* had rejected the Second Circuit's characterization of the right to control as property under the mail and wire fraud statutes.

On December 14, 2015, the Second Circuit denied Binday's petition for rehearing *en banc*.

### Binday Seeks Supreme Court Review

Binday then petitioned this Court for review, framing the issue as follows: "Whether a defendant may be convicted of federal criminal fraud when the purported victim has suffered no loss of tangible property, but has instead only been deprived of the intangible 'right to control' with whom it does business." *Binday v. United States*, No. 15-1140 (U.S.) at i.

Binday's certiorari petition was denied on June 20, 2016.

7

### Binday Files a Section 2255 Motion Concerning the Right to Control

Having exhausted his direct appeal challenges, and aware that the Second Circuit repeatedly reaffirmed the right to control theory of fraud (and the Supreme Court denied review in several of those cases),[1] on June 20, 2017, Binday filed a section 2255 motion for ineffective assistance of counsel because his trial attorney misstated the right to control standard. *Binday v. United States* No. 17-cv-4723 (S.D.N.Y.) Doc. 1. He again raised his challenge:

> Mr. Binday continues to assert that the right to control theory is inconsistent with United States Supreme Court precedent. . . . Mr. Binday expressly does not waive his right to re-assert his objection to the right to control theory in a future proper forum. . . .

*Binday*, No. 12-cr-152, Doc. 446 at 5-6.

The district court denied Binday's motion and a certificate of appealability. *Binday*, No. 12-cr-152, Doc. 448. Binday asked the Second Circuit for a certificate of appealability, which it denied. *Id.* Doc. 457. Binday then moved for reconsideration on that issue, which was denied on May 6, 2019. *Binday v. United States*, No. 18-2143 (2d Cir.) Docs. 76, 80.

### Binday's Second Certiorari Petition Seeking Right to Control Review

---

1. For example: *United States v. Finazzo*, 850 F.3d 94 (2d Cir. 2017); *United States v. Viloski*, 557 F. App'x 28 (2d Cir. 2014), *cert. denied*, 137 S. Ct. 1223 (2017).

8

On August 27, 2019, Binday sought review in this Court in which he raised the ineffective assistance and right to control contentions. *Binday v. United States*, No. 19-273 (S. Ct.), Cert. Petition at ii. He did so because the Supreme Court had granted review in *Kelly v. United States*, 140 S. Ct. 1565 (2020), a Third Circuit decision that affirmed convictions based in part on the right to control theory. *Id.*

**Binday's *Amicus* Briefs Challenging Right to Control Fraud**

Binday filed *amicus* briefs in *Kelly* and in *Aldissi v. United States*, No. 19-5805 (S. Ct.), in which he argued that the right to control theory was inconsistent with Supreme Court precedent and unconstitutional.

The Supreme Court did not grant Binday's certiorari petition, but it did reverse the convictions in *Kelly*.

**Binday Files a Section 2255 Motion Based on *Kelly***

Binday then filed a section 2255 motion in the district court arguing that *Kelly* undermined his conviction because his alleged scheme was to *buy* and pay full price for the insurance policies at issue and any incidental costs from the breach of contract were not money he sought to obtain. *Binday*, No. 12-cr-152-CM, Doc. 479 at 12, 29-30, 32. The district court forwarded the motion to the Second Circuit.

On October 12, 2021, the Second Circuit denied Binday leave to file a 2255 motion and denied Binday's section 2241 motion to vacate his conviction. *Binday* No. 21-1206,

9

Doc. 46. It reasoned that *Kelly* did not reject the right to control theory and so Binday was not "actually innocent." *Id.* at 1-2.

### Binday's Third Certiorari Petition Challenging Right to Control Fraud

On March 12, 2022, Binday filed a petition for certiorari, again challenging the right to control theory.

On September 21, 2022, the government filed a memorandum of non-opposition, saying that "the Court's resolution of the questions presented in *Ciminelli* and *Jones* [*v. Hendrix*, No. 21-857] may affect the judgment of the court of appeals below," and the Court should dispose of Binday's petition in accordance with its decisions in those cases. *Binday v. United States*, No. 21-1241 (S. Ct.), Memorandum of the United States at 2.

The government did not claim that Binday was procedurally foreclosed from filing a section 2255 motion because of the "second or successive" paragraph of section 2255(h).

### The Supreme Court Grants Binday's Petition, Vacates, and Remands

On May 22, 2023, eleven days after it decided *Ciminelli*, this Court granted Binday's petition, vacated the order below, and remanded "for further consideration in light of *Ciminelli*." Doc. 80. The Court made no reference to *Jones v. Hendrix*.

10

**Second Circuit Proceedings Underlying this Petition**

On remand, Binday argued that (a) the government waived procedural defenses because it conceded *Ciminelli* would control the outcome of his case; (2) Binday's post-*Ciminelli* 2255 motion would not be "second or successive" within the meaning of section 2255(h) because that hurdle does not apply to people, like Binday, who raised his challenges on direct appeal; and (3) Binday made a prima facie showing that *Ciminelli* is a new rule of constitutional law retroactive to cases on collateral review. *Binday v. United States*, No. 21-1206 (2d Cir.) Doc. 115-1.

On May 6, 2024, the Second Circuit denied Binday authorization to file a 2255 motion because he previously filed one, and it decided that *Ciminelli* applies only prospectively. *Id.* Doc. 155 ("May 6 Order").

**REASONS FOR GRANTING THE PETITION**

Whether *Ciminelli* was a constitutional and retroactive decision is significant: the May 6 Order is inconsistent with every other "property" decision by this Court, even decisions about retroactivity by the Second Circuit. Failure to address the issue now will only encourage prosecutors to try new formulations of their now-discarded theories. Indeed, two cases pending in this Court highlight the government's continuing efforts to create new prosecution tools using creative language. In *Porat v. United States*, 76 F.3d 213 (3d Cir. 2023), *cert. filed*, No. 23-832 (S. Ct. 2023), and *Kousisis v. United States*, 82 F.3d 230 (3d Cir. 2023), *cert. filed*, No. 23-909 (S. Ct. 2023), the government convinced the Third Circuit

11

to adopt a diluted and overbroad "fraudulent inducement" theory of property.

Second, in the months since *Ciminelli* was decided, several courts have recognized that it was a constitutional and retroactive decision and are thus in conflict with the Second Circuit's order here. *See Porat*, 76 F.4th at 225 ("three important constitutional principles undergird [*Ciminelli*'s] jurisprudence: notice, federalism, and self-governance") (Krause, J., concurring); *Alfaro v. United States*, 2024 WL 2194852, at *4 (W.D. Tex. May 14, 2024) ("*Ciminelli* . . . may therefore serve as a basis for habeas relief [under section 2255] for a defendant convicted under this theory as it places certain kinds of conduct beyond the power of the criminal law to proscribe."); *United States v. Full Play Grp., S.A.*, 2023 WL 5672268, at *23, n.27 (E.D.N.Y. Sept. 1, 2023) ("the Supreme Court's issuance of *Ciminelli* in tandem with *Percoco* strongly suggests the Court's view that the scope of wire fraud offenses under both statutes must be narrowed and more clearly defined to avoid unconstitutional vagueness").

Binday could wait for other lower courts to address the issue and then ask the Second Circuit to correct itself, but that would be unfair to him and others who have pressed for justice—and been right—for years. Binday is the right person to present these arguments. He pursued his arguments in his own and others' cases and thus cannot be said to have abused the writ. Since this Court already abrogated the decision affirming Binday's petition, the basis for and defects of his conviction are well-established. The government previously agreed that *Ciminelli* should decide Binday's case, and it has now reneged on that representation.

12

## I. THE SECOND CIRCUIT'S ORDER THAT *CIMINELLI* APPLIES ONLY PROSPECTIVELY IS INCONSISTENT WITH EVERY PRECEDENT OF THIS COURT

The holding in *Ciminelli* is a retroactive constitutional decision.

1.    When the Supreme Court holds that a conviction "is not authorized by substantive law . . . '[t]here is little societal interest in permitting the criminal process to rest at a point where it ought properly never to repose.'" *Welch v. United States*, 578 U.S. 120, 131 (2016) (citation omitted); *see Bousley v. United States*, 523 U.S. 614, 620 (1998) (when "a substantive federal criminal statute does not reach certain conduct," the decision applies retroactively on habeas review). Retroactive application is necessary to address the "significant risk" that defendants might have been convicted for acts that were not criminal. *Id.*; *see Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004) (new[2] *substantive* rules of constitutional law apply retroactively).

*Ciminelli* <u>ruled</u> that right to control fraud was not authorized by substantive law in violation of several constitutional rules:

- The federal "fraud statutes do not vest a general power in 'the Federal Government

---

2.    "[A] rule is new unless, at the time the conviction became final, the rule was already 'apparent to all reasonable jurists.'" *Edwards v. Vannoy*, 593 U.S. 255, 265 (2021). The decision in *Ciminelli* was not apparent, at least to the court below, and thus is "new."

13

. . . to enforce (its view of ) integrity in broad swaths of state and local policymaking.'" *Ciminelli*, 143 S. Ct. at 1126. The right to control thus violates principles of federalism.

- Lower courts historically violated this limit on federal power by authorizing fraud prosecutions for intangible interests like honest services, honest elections, and the right of privacy, but the Supreme Court "halted that trend" in *McNally*. *Id*. at 1127. In other words, the previous expansion of the fraud statutes resulted in unconstitutionally overbroad applications.

- The right to control theory "cannot be squared with the text of the federal fraud statutes." *Id*. at 1127. It is a constructive crime—a judicially created offense.

- The right to control theory is like the intangible interests *McNally* rejected as overbroad because courts may not "construe the federal fraud statutes in a manner that leaves [their] outer boundaries ambiguous." *Ciminelli*. *Id*. at 1127, n.4. The right to control theory is thus unconstitutionally ambiguous and overbroad and violates the rule of lenity.

- The government conceded that the right to control theory expanded the federal fraud statutes "beyond property fraud as defined at common law and as Congress would have

14

understood it." *Id.* at 1128. It termed the
right to control theory as "incorrect" and
"overbroad," conceding that "[t]he Second
Circuit has not always been consistent in
its articulation of the requirements of the
right-to-control theory, or in its efforts to
ground those requirements in the elements
of fraud." Brief for the United States,
*Ciminelli v. United States*, No. 21-1170,
at 12, 24. In other words, the government
conceded that right to control fraud was an
unconstitutional constructive crime.

- Congress made no effort, after *McNally*,
  to include any intangible right other than
  honest services in section 1346, which
  "forecloses the expansion of the wire
  fraud statute to cover the intangible right
  to control." *Id.* at 1128. Thus, Congress's
  "reverberating silence" about the right
  to control after *McNally* means it did not
  criminalize a scheme to deprive someone of
  information. *Id.*

- The right to control theory represents a
  judicial expansion of "federal jurisdiction
  without statutory authorization." *Id.* It
  criminalizes contract breaches and torts
  in an "almost limitless variety of deceptive
  actions." It "thus criminalizes traditionally
  civil matters and federalizes traditionally
  state matters"—violating federalism
  principles. *Id.*

15

*Ciminelli* <u>relied on</u> decisions applying constitutional principles.

The Court cited and discussed *Cleveland* nine times; *Cleveland* in turn relied on (a) federalism ("Equating issuance of licenses or permits with deprivation of property would subject to federal mail fraud prosecution a wide range of conduct traditionally regulated by state and local authorities" and "we will not read the mail fraud statute to place under federal superintendence a vast array of conduct traditionally policed by the States." *Cleveland*, 531 U.S. at 24, 25); and (b) ambiguity ("we have instructed that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Id*. at 25).

The Court also found that right to control fraud violated federalism and constituted a constructive crime as discussed in *Kelly* (which *Ciminelli* cited three times): "This understanding reflects not only the original meaning of the text, but also that the fraud statutes do not vest a general power in 'the Federal Government . . . to enforce (its view of ) integrity in broad swaths of state and local policymaking.'" *Ciminelli*, 143 S. Ct. at 1126.

The Court relied on *McNally*, which in turn relied on (a) the rule of lenity ("when there are two rational readings of a criminal statute, one harsher than the other, we are to choose the harsher only when Congress has spoken in clear and definite language." *McNally*, 483 U.S. at 359-60 (1987)); (b) the due process prohibition of constructive offenses described in *Fasulo*, 272 U.S. at 629 ("There are no constructive offenses; and, before one can be punished, it must be shown that his case is

16

plainly within the statute"); and (c) the due process rule against ambiguous criminal statutes and the improper delegation to prosecutors of the power to "set standards of disclosure." *McNally*, 483 U.S. at 360.

The Court relied on *United States v. Sadler*, 750 F.3d 585, 592 (6th Cir. 2014), which grounded its decision in the rule of lenity: "That silence also requires us to pick the more lenient reading of the wire-fraud law." *See Wooden v. United States*, 142 S. Ct. 1063, 1082 (2022) (Gorsuch, J., concurring) (the rule of lenity is grounded in due process guarantees of fair notice "by ensuring that an individual's liberty always prevails over ambiguous laws").

Constructive crimes are those that are "built up or created when a court enlarges a statute by altering or straining the statute's language, esp. to drawing unreasonable implications and inferences from it.—Also termed constructive offense; implied crime; implied offense; presumed crime; presumed offense." CRIME, Black's Law Dictionary (11th ed. 2019). "[L]egislatures and not courts should define criminal activity." *United States v. Bass*, 404 U.S. 336, 348 (1971).

Constructive offenses are unconstitutional because Congress has not adopted them: "We are aware that this is a criminal statute and must be strictly construed. This means that no offense may be created except by the words of Congress used in their usual and ordinary sense. There are no constructive offenses." *United States v. Alpers*, 338 U.S. 680, 681 (1950).

"Statutes creating crimes are to be strictly construed in favor of the accused; they may not be held to extend to

17

cases not covered by the words used. . . . Before one may be punished, it must appear that his case is plainly within the statute; there are no constructive offenses." *United States v. Resnick*, 299 U.S. 207, 209-10 (1936).

2.  Whether the Court narrows a statute to avoid a constitutional violation, as in *Skilling*, or rejects a lower court's overbroad application of the statute, as in *McNally* or *Cleveland*, the result is the same: the ruling is retroactive. *See, e.g.*, *Ingber v. Enzor*, 841 F.2d 450, 455 (2d Cir. 1988) (*McNally* "should be applied retroactively in Ingber's case."); *United States v. Shelton*, 848 F.2d 1485, 1489-90 (10th Cir. 1988) ("the opinion in *McNally* must be given retroactive effect in a section 2255 proceeding"); *United States v. Mitchell*, 867 F.2d 1232, 1233 (9th Cir. 1989) ("*McNally* is fully retroactive"); *Magnuson v. United States*, 861 F.2d 166, 167 (7th Cir. 1988) ("the rule announced in *McNally* is to be applied retroactively in a collateral attack on a conviction"); *United States v. Peter*, 310 F.3d 709, 711 (11th Cir. 2002) ("the facts to which Peter pled guilty did not constitute a crime under *Cleveland* [and] must be given retroactive effect"); *Rodrigues v. United States*, 2011 WL 529158, at *8 (D. Haw. 2011) ("Because the decision in *Skilling* '[explains] its understanding of what the statute has meant continuously since the date when it became law,' . . . *Skilling* must apply retroactively to criminal convictions under 18 U.S.C. § 1346."), *aff'd*, 678 F.3d 693 (9th Cir. 2012); *Martignoni v. United States*, 2011 WL 4834217, at *9 (S.D.N.Y. Oct. 12, 2011) ("at oral argument, the Government acknowledged that the *Skilling* holding may be applied retroactively in a collateral attack on a conviction"); *Turner v. United States*, 693 F.3d 756, 758 (7th Cir. 2012) ("government also concedes that *Skilling* applies retroactively to cases on collateral review").

18

3.   Despite the clarity of the Court's language in *Ciminelli*, and its reliance on multiple constitutional principles to support its decision, the Second Circuit asserted that *Ciminelli* has prospective application only—that prosecutors cannot charge right to control fraud in the future, but some people convicted of right to control fraud are stuck with felony convictions for a non-crime. "Prospective decisionmaking is the handmaid of judicial activism. . . . [American law] viewed retroactivity as an inherent characteristic of the judicial power, a power 'not delegated to pronounce a new law, but to maintain and expound the old one.' 1 W. Blackstone, Commentaries 69 (1765)." *Harper v. Virginia Dep't of Tax'n*, 509 U.S. 86, 105, 107 (1993) (Scalia, J., concurring).

4.   The Second Circuit provided little reasoning for its prospective application of *Ciminelli*, saying only that this Court's reliance "on constitutional principles such as federalism to arrive at its conclusion . . . does not mean that it announced a new rule of constitutional law." May 6 Order at 2. It did not explain what that reliance *did* mean, however. Instead, for its conclusion, the court cited to *Washington v. United States*, 868 F.3d 64, 66 (2d Cir. 2017), which held that the interpretation of the sentencing enhancement provision of the Armed Career Criminal Act ("ACCA") in *Mathis v. United States*, 579 U.S. 500 (2016), did not announce a new rule of constitutional law. *Washington* is inapposite.

<u>First</u>, the petitioner in *Ciminelli* presented constitutional arguments to this Court, not statutory interpretation claims. In his petition, Ciminelli relied on this Court's decisions that restricted the meaning of property to its original meaning so that prosecutors

19

are prevented from (a) enforcing their own views of integrity; (b) making a "sweeping expansion of federal criminal jurisdiction;" (c) eliding the "obtain" portion of the statute; (d) violating the constitutional obligations to provide fair notice, exercise lenity, and respect federalism; (e) employing vague standards of criminal liability; and (f) changing the federal-state balance in the prosecution of crimes. *Ciminelli*, No. 21-1170, Cert. Petition at 11-33.

<u>Second</u>, *Ciminelli* relied solely on multiple constitutional principles to jettison right to control fraud, as noted above, and not on statutory interpretation rules, discussed below.

<u>Third</u>, the Second Circuit confused a court opinion (like its own in *United States v. Wallach*, 935 F.2d 445 (2d Cir. 1991)) that (incorrectly) interpreted the word "property" with a Supreme Court decision that *rejected* that interpretation because it cannot be squared with the statute Congress passed, it is vague, it intrudes on states' regulatory power, it criminalizes deceit and contract violations, and it creates a crime Congress chose not to adopt. The opinion in *Ciminelli* did not interpret; it judged.

It does not matter whether this Court chooses a constitutional version of a lower court interpretation (and thus implements the constitutional avoidance doctrine[3]) or rejects the lower court interpretation, as in *Ciminelli*, because the lower court's interpretation violates the Constitution. Both scenarios are governed

---

3. The doctrine of constitutional avoidance requires courts to avoid constructions of statutes that would "raise serious constitutional problems." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988).

20

by constitutional rules. That is why *Ciminelli* rejected the government's proposal that the Court adopt a new theory that fit the trial evidence; to do so would constitute a violation of the constitutional right to a jury trial. *See McCormick v. United States*, 500 U.S. 257, 270 (1991) ("This Court has never held that the right to a jury trial is satisfied when an appellate court retries a case on appeal under different instructions and on a different theory than was ever presented to the jury."); *Dunn v. United States*, 442 U.S. 100, 106 (1979) ("Few constitutional principles are more firmly established than a defendant's right to be heard on the specific charges of which he is accused.").

<u>Fourth</u>, there was no statutory interpretation in *Ciminelli*. The word "interpret" appears once in the opinion and only then to criticize lower courts' application of the fraud statutes to "protect intangible interests ***unconnected*** to traditional property rights." *Ciminelli*, 598 U.S. at 312 (emphasis added). The Court used none of the rules that it has used to interpret statutes in other cases. *See, e.g., Rehaif v. United States*, 588 U.S 225, 228-30 (2019) (using no constitutional principles and instead applying interpretive rules such as (a) Black's Law Dictionary; (b) general rules regarding the application of mens rea requirements to each element of the offense; (c) the "interpretive maxim" that scienter is presumed in a criminal law; (d) how the word knowingly "modified" a verb in the statute; (e) explaining that the "*proper interpretation* of the statute" turns on what it means for a defendant to know that he has 'violate[d]' § 922(g)"; and (f) Congressional "intent"); *McDonnell v. United States*, 579 U.S. 550, 566, 568-69, 571 (2016) (addressing "the proper interpretation of the term 'official act'" and referring to (a) Webster's dictionary; (b) the "familiar

21

interpretive canon *noscitur a sociis,*"; (c) the presumption
that words used in a statute should not be superfluous;
and (d) previous statutory interpretation cases to identify
those boundaries).

*Ciminelli* did not inform the government of *how*
prosecutors may prove a case, a hallmark of statutory
interpretation; it told them that *conduct* previously
proscribed by lower courts does not fit the crime.

The case upon which the lower court relied—
*Washington*, 868 F.3d 64—stands for the unremarkable
proposition that this Court's interpretation of phrases in
the ACCA are not retroactive because the Constitution did
not compel one interpretation over another. In *Taylor v.
United States*, 495 U.S. 575, 598 (1990), and *Mathis*, 579
U.S. 500, the Court decided how the government could
prove the facts needed for a court to impose a longer
prison sentence: (1) whether "burglary" meant individual
state burglary laws, its common law meaning, or "the
generic, contemporary meaning of burglary" (*Taylor*);
and (2) whether there is an exception to *Taylor*'s "generic"
underlying offense ruling for state crimes that identify
multiple ways of proving elements of the generic offenses
(*Mathis*).

The court in *Washington* had no reason to mention
*Johnson v. United States*, 576 U.S. 591, 598 (2015)—which
held that the ACCA's residual clause was unconstitutionally
vague because of its "hopeless indeterminacy"—because
Washington's sentence was not enhanced under that
clause. But this Court held that *Johnson* was retroactive
one year after it was decided in *Welch*, 578 U.S. at 129,
because *Johnson* changed the "substantive reach of the

22

[ACCA], altering 'the range of conduct or the class of persons that the [Act] punishes'" (citation omitted).

Indeed, in *Welch*, the government *agreed* that *Johnson* was retroactive, and the *amicus* appointed to argue against it "acknowledge[d] that a decision that saves a vague statute by adopting a limiting construction is substantive, so anyone who falls outside the limiting construction can use that decision to seek relief on collateral review." 578 U.S. at 134. Having prevailed in *Welch* on when a new decision is constitutional and retroactive and having defeated the *amicus* effort to create an exception to those rules for statutory interpretation, the government is estopped from rearguing here the *Welch amicus*'s rejected claim. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding").

Justice O'Connor put the rule simply: "When the Court holds as a new rule in a subsequent case that a particular species of primary, private individual conduct is beyond the power of the criminal lawmaking authority to proscribe, it necessarily follows that this Court has 'made' that new rule retroactive to cases on collateral review . . . without any application of principles by lower courts." *Tyler v. Cain*, 533 U.S. 656, 669 (2001) (O'Connor, J., concurring).

5.   If this Court does not vacate the May 6 Order, then there will be two unlawful consequences: (a) people convicted of right to control fraud will bear an illegal conviction and all the negative consequences of such a conviction; and (b) the government and lower courts

23

will be free to test new formulations of right to control fraud. To paraphrase Justice Gorsuch, lower courts will be "guessing" at the limits of the fraud statutes. *Percoco v. United States*, 598 U.S. 319, 336 (2023) (Gorsuch, J., concurring). They will be peppered with rights arising out of contract and tort law that the government argues are property interests worthy of federal fraud prosecutions.

This Court observed that right to control fraud sprang into use after *McNally*, as prosecutors sought new ways to put the old wine of honest services fraud into new bottles. *See Ciminelli*, 598 U.S. at 313. That problem is already taking place. Two defendants from the Third Circuit, *Porat* and *Kousisis*, have sought review in this Court because lower courts adopted "fraudulent inducement" as property, without requiring a promise collateral or extraneous to an agreement that civil law imposes. *Compare United States v. Richter*, 796 F.3d 1173, 1191 (10th Cir. 2015) (fraud case premised on complainants "relying on . . . representations" made in a contract) *with Int'l CableTel Inc. v. Le Groupe Videotron Ltee*, 978 F. Supp. 483, 487-88 (S.D.N.Y. 1997) (Sotomayor, J.).

Similarly, the government has appealed a district court decision rejecting its claim that "contractual protections" are property. *United States v. Nordlicht*, 2023 WL 4490615, at *6 (E.D.N.Y. 2023), *appeal filed*, *United States v. Small*, No. 24-46, Doc. 1 (2d Cir. 2023).

If the May 6 Order is allowed to stand, fraudulent inducement and contractual representations will be deemed property by lower courts. It does not take much thought to concoct other intangible rights that prosecutors will propose:

24

- The rights associated with contracts, such as good faith and fair dealing, enforcement of contract provisions, no substitutions, timely performance, limits on resales, delivery terms, timely delivery and payment, no contract breaches, confidential treatment of contract terms, complete performance, no damages, refunds and repairs, and warranty compliance;

- The right to fair competition in bids relating to economic transactions;

- The right to be free from commercial disparagement;

- The right to be free from copyright or patent infringement; and

- The right to be free from all business torts such as tortious interference with contract, price fixing, unfair competition, injurious falsehoods.

There may be state or federal criminal laws that cover this conduct, but they are not "property."

## II. THE SECOND CIRCUIT'S TEST FOR "SECOND OR SUCCESSIVE" CONFLICTS WITH THIS COURT'S RULINGS

The Second Circuit's test for "second or successive" petitions conflicts with this Court's own constructions. That conflict should be resolved in this case.

25

**The Competing Constructions of Second or Successive**

<u>The Supreme Court's Explanation:</u>    Section 2255(h) is a "gatekeeping provision" barring motions challenging federal convictions when they are "second or successive" and do not rely on new evidence or a retroactive, constitutionally based Supreme Court decision. The phrase "second or successive" is not "self-defining." *Panetti v. Quarterman*, 551 U.S. 930, 943 (2007). It does not apply to all collateral petitions "filed second or successively in time, even when the later filings address a . . . judgment already challenged in a prior . . . application." *Id.* at 944. Instead, "second or successive" is a "term of art," *Slack v. McDaniel*, 529 U.S. 473, 486 (2000), that "takes its full meaning from [the Supreme Court's] case law, including decisions predating the enactment of [section 2255(h)]." *Panetti*, 551 U.S. at 943-44. Since the phrase "second or successive" limits the courts' jurisdiction, it must be read narrowly. *Castro v. United States*, 540 U.S. 375, 381 (2003).

A petitioner who previously raised the same argument in an unsuccessful habeas petition, and whose position has since been adopted by the Supreme Court, does not abuse the writ when he reminds the lower courts that he was right.

<u>The Second Circuit's Explanation</u>:    The Second Circuit, on the other hand, broadly rejects *any* later-in-time 2255 motion that attacks the same judgment the petitioner previously challenged in a 2255 motion, regardless of whether the court got the law wrong the first time. According to the Second Circuit, any proposed section 2255 motion is successive if an earlier 2255 motion

26

"challenged the same criminal judgment, was decided on the merits, and reached final adjudication before the present proceeding commenced." May 6 Order at 1-2 (citing *Vu v. United States*, 648 F.3d 111, 113 (2d Cir. 2011)).

The *Vu* rule is not "gatekeeping." It is an unreasonable barrier that ignores everything this Court has said about how to determine whether a 2255 motion is second or successive. It is even self-contradictory because it bars 2255 motions when the court knows the petitioner is innocent: When Binday first sought authorization to file a section 2255 motion after this Court decided *Kelly*, the Second Circuit denied the request because it had recently reaffirmed the right to control theory and thus Binday was not "actually innocent." *Binday v. United States*, No. 21-1206, Doc. 46, App. at 6-7. By the court of appeals's own reasoning then, Binday was actually innocent once *Ciminelli* eliminated right to control fraud. Yet, it denied Binday relief.

## 1.   The Second Circuit Ignored The Criteria for "Second or Successive" Described in *Banister v. Davis*

In its May 6 Order, the Second Circuit dismissed the test for "second or successive" described in *Banister v. Davis*, 590 U.S. 504 (2020), as inapplicable to Binday, but *Banister* set out how courts must decide if a second in time habeas petition is barred. Its test is contrary to *Vu*.

According to *Banister*, courts must first ask whether a "later-in-time filing would have 'constituted an abuse of the writ, as that concept is explained in our [pre-AEDPA] cases.'" *Banister*, 590 U.S. at 512 (quoting *Panetti*). "If so, it is successive; if not, likely not." *Id.*

27

A person abuses the writ when he raises the *same ground* in a later petition that was rejected on the merits in an earlier petition. *Sanders v. United States*, 373 U.S. 1, 15 (1963). It is also an abuse of the writ to raise in a later petition a claim that *could have been* developed in the earlier petition because a court need not "tolerate needless piecemeal litigation [or] to entertain collateral proceedings whose only purpose is to vex, harass, or delay." *Id*. at 18.

The abuse of the writ doctrine requires courts to "look to the substance of the claim the application raises and decide whether the petitioner had a full and fair opportunity to raise the claim in the prior application." *Magwood v. Patterson*, 561 U.S. 320, 345 (2010) (Kennedy, J., dissenting) (citing *Panetti*, 551 U.S. at 947). "[I]f the petitioner had no fair opportunity to raise the claim in the prior application, a subsequent application raising that claim is not 'second or successive,' and [AEDPA's] bar does not apply." *Id.* at 346 (Kennedy, J., dissenting) (citing *Panetti*, 551 U.S. at 947).

While AEDPA is more stringent than prior law, it "did not redefine what qualifies as a successive petition." *Banister*, 590 U.S. at 515.

Second, this Court directed lower courts to consider the purpose of section 2255(h): its restrictions were meant to "conserve judicial resources, reduc[e] piecemeal litigation," and "lend[ ] finality to state court judgments within a reasonable time." *Id.* at 512 (quoting *Panetti*).

Third, with those goals in mind, courts must consider "'the implications for habeas practice' of allowing a type of filing, to assess whether Congress would have viewed it

28

as successive." *Id.* at 512-13 (quoting *Stewart v. Martinez-Villareal*, 523 U.S. 637, 644 (1998)).

Thus, a court may not reject a later in time section 2255 motion simply because it challenges the same judgment as an earlier motion. In *Stewart* and *Panetti*, this Court authorized later in time habeas petitions in which inmates contended they were mentally unfit to be executed (a constitutional violation under *Ford v. Wainwright*, 477 U.S. 399 (1986)) because the claims were not "ripe" when they were originally filed.

These limits on the breadth of "second or successive" reflect Congress's codification of pre-existing "abuse of the writ" law. "It is not unusual for Congress to codify earlier precedent in the habeas context. Thus, for example, . . . the abuse of the writ doctrine applied in *Sanders* [ ], [was] later codified. See 28 U.S.C. § 2254(b)." *Williams v. Taylor*, 529 U.S. 362, 380 n.11 (2000).[4]

Other circuit courts have recognized the limited scope of the "second or successive" requirement. *See In re Jones*, 54 F.4th 947, 950 (6th Cir. 2022) (Sutton, J.) (second in time petition not second/successive when a new Supreme Court decision authorized re-sentencing: courts have "long entertained repeat habeas petitions when subsequent occurring events have changed the

---

4. Justice Stevens's opinion where this footnote resides was not the majority opinion on the Court's decision on federal review of state court decisions; Justice O'Connor wrote that portion. But neither Justice O'Connor nor any other Justice disagreed with Justice Stevens's explanation that "second or successive" in section 2254 (and thus also in section 2255) meant the same before and after AEDPA.

29

situation of the petitioner so as in fact to present a new
case for consideration"; to do otherwise would encourage
prisoners to "pack[ ] their first § 2255 petition[ ] with
speculative or unripe claims"); *Scott v. United States*,
890 F.3d 1239, 1252-55 (11th Cir. 2018) (*Panetti* applied
to newly discovered *Brady* claims but panel was required
to rule otherwise due to a prior conflicting panel decision);
*Stewart v. United States*, 646 F.3d 856, 852 (11th Cir.
2011) ("[W]hen a [legal] claim could not have been raised
in a prior habeas petition, courts have interpreted
*Panetti* to permit that claim to be raised in a subsequent
petition[.]"); *In re Jones*, 652 F.3d 603, 605 (6th Cir. 2010)
(petition authorized where predicate (change in parole
law) arose after earlier petitions because the claim was
"unripe when his initial petition was filed"); *Johnson v.
Wynder*, 408 F. App'x 616, 619 (3d Cir. 2010) (legal claim
that ripened into an actual innocence claim after first
habeas petition was not second or successive: "We see no
reason to avoid applying *Panetti* in the context of other
types of claims that ripen only after an initial federal
habeas petition has been filed."); *United States v. Lopez*,
577 F.3d 1053, 1064 (9th Cir. 2009) ("The considerations
the [Supreme] Court identified in support of its holding
are not specifically limited to *Ford* claims, and therefore
must be considered in deciding whether other types of
claims that do not survive a literal reading of AEDPA's
gatekeeping requirements may nonetheless be addressed
on the merits.").

Thus, a person who raised an issue on appeal and
lost, and then chooses to raise a different issue in a 2255
motion, may raise the original appellate issue in a later in
time 2255 motion after an intervening change in the law
because such a motion is not second or successive. Binday

30

*could not* make the argument in his first 2255 motion, *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001) ("a § 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'" (citation omitted)).[5] And he *did not* make (and thus could not repeat) the argument in his first 2255 motion. He made the argument on appeal, preserving his ability to revive that argument if the law changed.

The proceedings in *Jones v. Hendrix*, 599 U.S. 465 (2023), support the distinction between those petitioners who raise (losing) arguments on appeal and those who do not. Jones "flooded the federal dockets with unsuccessful postconviction challenges, including numerous § 2255 motions," *Jones v. Hendrix*, 8 F.4th 683, 685 (8th Cir. 2021), *aff'd*, 599 U.S. 465 (2023), but he never raised the *Rehaif* issue: "Jones *could have* raised his *Rehaif*-type argument either on direct appeal or in his initial § 2255 motion. Although our precedent was at that time against him, he nonetheless *could have* succeeded before the *en banc* court or before the Supreme Court. And, regardless, the question is whether Jones could have raised the argument, not whether he would have succeeded." *Id*. at 687 (emphasis added).

In other words, the Eighth Circuit held, if Jones had raised the *Rehaif* issue on direct appeal or in an earlier 2255 motion—a fact that distinguishes Jones from Binday—then a later in time 2255 motion would not have been second or successive. Congress wanted defendants

---

5.  In his original 2255 motion, Binday reminded the district court and the court of appeals about his appellate argument and petitioned this Court in connection with *Kelly* to consider the legality of right to control fraud.

31

to include all their potential claims in an appeal, even if the likelihood of success was small.

Courts that bar belated claims not previously raised make the distinction between vigilant and non-vigilant litigants by talking about what they could (and should) have done. For example, in *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003), the Second Circuit held that Cephas "could plainly have raised [his *Bailey* claim] on direct appeal" and did not, so he was foreclosed from raising it later through a section 2255 or 2241 motion.

Why draw the distinction between defendants who did and those who did not raise claims later credited by the Supreme Court if both sets are equally out of luck?

*Jones* also cited *Davis v. United States*, 417 U.S. 333, 336 (1974)—another decision that conflicts with *Vu*. In *Davis*, the Court held that a person like Binday could file a second in time 2255 motion when he had raised the issue on direct appeal and the Supreme Court later validated that argument. *Jones* reaffirmed that *Davis* authorized a collateral attack on convictions after criminal laws. *Jones*, 599 U.S. at 486 & n.9.

The defendant in *Davis* appealed his conviction to the Ninth Circuit. While his appeal was pending, the Supreme Court decided a case that raised doubt about the conviction, and the Ninth Circuit remanded. The district court reaffirmed Davis's conviction, and the Ninth Circuit affirmed. When the Ninth Circuit later reversed a different defendant's conviction based on the same law, Davis filed a 2255 motion. It was denied and the Ninth Circuit affirmed, but this Court reversed, drawing a

32

distinction between defendants who raise a challenge
on direct appeal that is later vindicated by the Supreme
Court and those who do not, reaffirming the holding in
*Sanders* that a second in time 2255 is not barred if the
defendant raised the challenge on direct appeal or in an
earlier 2255 motion. *Davis*, 417 U.S. at 342.

The Court noted that when defendants "pursued the
appellate course and failed, their cases would be quite
different. But since they chose not to pursue the remedy
which they had, we do not think they should now be allowed
to justify their failure by saying they deemed any appeal
futile." *Id.* at 345 (cleaned up).

In one court of appeals decision that *Jones v. Hendrix*
listed as construing section 2255(e) correctly, *Prost v.
Anderson*, 636 F.3d 578 (10th Cir. 2011), the defendant
pled guilty to money laundering, filed a 2255 motion
challenging his sentence, and then ten years later filed a
2241 motion to vacate his conviction when the Supreme
Court narrowed the scope of Prost's statute of conviction.
Then-Judge Gorsuch held that Prost could not use section
2241 to avoid the restrictions of section 2255(e), but he also
held that "Prost never pursued a statutory interpretation
argument in his own trial court proceedings, on appeal,
or in his initial collateral challenge to his conviction." *Id.*
at 579.

Again, the Second Circuit's test draws no distinction
between those who raise issues on appeal and those who
do not.

The considerations the Supreme Court detailed in
*Panetti* and *Banister*—the abuse of the writ doctrine, the

33

implications for habeas practice, and AEDPA's purposes—
all demonstrate that the Second Circuit's test for second
or successive is wrong.

### 2. The Second Circuit's Test Damages Habeas Practice

Precluding claims of innocence where the Supreme
Court has invalidated the legal basis for a person's
conviction, just because he filed a 2255 motion after an
appellate court incorrectly rejected his valid arguments
on appeal, would damage habeas practice.

For example: If two people are convicted of the same
federal crime, both lose their appeals, and only one files
(and loses) a section 2255 motion within AEDPA's statute
of limitations, then only the person who sat on his hands
would be freed when, years later,[6] the Supreme Court
rejects the legal basis for the convictions. That distorted
outcome would result even if the petitioner raised his legal
argument in the first petition and the court of appeals
incorrectly ruled against him. It would mean that *every*
later in time petition is barred as "second or successive"
unless a court can fashion a reason for finding the later
petition does not directly challenge the conviction but only
"concerns" it. *Urinyi v. United States*, 607 F.3d 318, 321
(2d Cir. 2010).

The illogic of this result is compounded in situations
like Binday's. At each stage of his case, Binday challenged

_____

6. Section 2255 runs the statute of limitations not just from
the date on which the conviction became final, but also from the
date a new, retroactively applicable right was recognized by the
Supreme Court. 28 U.S.C. § 2255(f)(3).

34

the right to control theory. The Second Circuit was
unwilling to part from its precedent, but this Court
confirmed Binday's position. It is particularly unfair—
and thus renders the habeas remedy haphazard and
inconsistent—to punish people like Binday for the Second
Circuit's adherence to a significant legal error.

### 3.  The Second Circuit's Test Impedes Finality And Deterrence Interests

The *Vu* test also interferes with the judicial goal
of finality. Instead, it tells the public that someone
who advocates for himself—and is proved right—is
nevertheless out of luck unless he sits on his hands for
years.

The hypothetical discussed above demonstrates that
silencing people like Binday and forcing them to wait
years until this Court has time to review their argument
does nothing to advance the goal of finality. The incentive
would be for prisoners to wait—sometimes decades—for
the Supreme Court to issue an opinion that undermines
the basis for their convictions, and only then file their
postconviction motion. This illogical result does nothing to
advance AEDPA's finality interests and instead impedes
them.

Moreover, petitioners cannot always know *which*
Supreme Court decision may undermine their conviction.
So, to comply with AEDPA's one-year statute of
limitations, they *must* make their arguments when
they have a colorable claim. Binday believed *Skilling*
undermined his conviction and made that argument on
direct appeal. He believed *Kelly* (and now *Ciminelli*)

35

undermined his conviction and so moved within one year of those decisions for relief. If this Court believed *Kelly* affected Binday's conviction, and Binday had decided to wait, then he would be denied the relief the courts would otherwise have granted.

Nor would denying Binday authorization promote deterrence. Over two decades ago, then-Chief-Judge Richard Posner explained why cutting off a person's ability to vindicate his own previous arguments promotes disrespect for the law: "The more accurate the process of determining guilt is, the less random punishment will be, and so the greater will be the law's deterrent effect. To put this point differently, greater accuracy in the determination of guilt increases the returns to being innocent." Richard A. Posner, *An Economic Approach to the Law of Evidence*, 51 STAN. L. REV. 1477, 1483 (1999). Other scholars have likewise stated that conviction of the innocent *decreases* deterrent effects. *See* Nuno Garoupa & Matteo Rizzolli, *Wrongful Convictions Do Lower Deterrence*, 168 J. INSTITUTIONAL & THEORETICAL ECON. 224 (2012).

In short, the Second Circuit's *Vu* test encourages delays and irrational, unjust results, with the judicial system gaming petitioners rather than the other way around.

### III. THE QUESTIONS PRESENTED ARE CRITICALLY IMPORTANT AND THIS CASE IS IDEAL TO RESOLVE THEM

There are already conflicts in the lower courts over the retroactivity of *Ciminelli*. One circuit judge (in *Porat*)

36

and two district courts have indicated that it meets the standard for retroactivity.

Resolution of these issues is also critically important for courts, prosecutors, defense attorneys and, of course, individuals. New versions of right to control fraud are already emerging; people engaged in business transactions will be subjected to federal investigations if their counterparties are unhappy. People and the attorneys who advise them are left with little guidance on what they must disclose in business, when they must disclose it, and what the consequence will be if they don't: a lawsuit or prison.

Defense lawyers now have no real understanding of what section 2255(h) means: does second or successive mean what this Court has said for 61 years (since *Sanders*) or does it mean what the Second Circuit said in *Vu*? Should a lawyer tell his client to forgo a credible claim of ineffective assistance because someday, many years in the future, the Supreme Court might rule that the theory of criminal liability used to convict him was defective? Or is that in itself ineffective assistance? In short, how should lawyers read the decisions, including those written by this Court, that suggest that raising an argument at trial and on appeal will preserve the client's ability to revive the claim if the Court ultimately agrees with him?

Binday is the right person to make all these arguments. He articulated the defects this Court recognized in *Ciminelli* throughout his prosecution, and he preserved his claim based on court decisions that criticize defendants when their lawyers do not raise arguments likely to fail. Yet, even though this Court abrogated the decision

37

affirming his conviction, Binday has no recourse, according to the Second Circuit. That situation is inconsistent with any formulation of due process.

## CONCLUSION

The petition for a writ of certiorari should be granted.

Respectfully submitted,

DAVID W. SHAPIRO
  *Counsel of Record*
JANELLE SAMPANA
THE NORTON LAW FIRM
299 Third Street, Suite 200
Oakland, CA 94607
(510) 906-4906
dshapiro@nortonlaw.com

APPENDIX

*i*

## TABLE OF APPENDICES

*Page*

APPENDIX A — ORDER OF THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT, FILED MAY 6, 2024 . . . . . . .1a

APPENDIX B — ORDER OF THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT, FILED OCTOBER 12, 2021 . . . . . . . . . . . . . . . . . . . . . . . . . .5a

APPENDIX C — JUDGMENT OF THE UNITED STATES SUPREME COURT, FILED JUNE 23, 2023 . . . . . . . . . . . . . . . . . . . . . . .8a

1a

**APPENDIX A — ORDER OF THE UNITED
STATES COURT OF APPEALS FOR THE
SECOND CIRCUIT, FILED MAY 6, 2024**

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

21-1206

MICHAEL BINDAY,

*Petitioner,*

v.

UNITED STATES OF AMERICA,

*Respondent.*

At a stated term of the United States Court of Appeals
for the Second Circuit, held at the Thurgood Marshall
United States Courthouse, 40 Foley Square, in the City
of New York, on the 6th day of May, two thousand twenty-
four.

Present:

Pierre N. Leval,
Robert D. Sack,
Michael H. Park,
　　*Circuit Judges.*

In 2021, this Court denied Petitioner's motion for leave to
file a successive 28 U.S.C. § 2255 motion challenging his mail

2a

*Appendix A*

and wire fraud convictions. 2d Cir. 21-1206, doc. 46 (Or.). In 2023, the Supreme Court granted Petitioner's petition for certiorari, vacated this Court's order, and remanded for reconsideration in light of *Ciminelli v. United States*, 598 U.S. 306 (2023), which held that a federal fraud conviction may not be based on a right-to-control theory of liability. *See Binday v. United States*, 143 S. Ct. 2491 (2023). On remand, Petitioner moves: (1) for a determination that his proposed § 2255 motion is not successive; (2) for leave to file a successive § 2255 motion based on *Ciminelli*; or (3) for recall of the mandate pertaining to his direct appeal and reversal of his conviction.

Upon due consideration, it is hereby ORDERED that the previously imposed stay is TERMINATED and Petitioner's motion is DENIED.

First, Petitioner's proposed § 2255 motion is successive because his previous § 2255 motion challenged the same criminal judgment, was decided on the merits, and reached final adjudication before the present proceeding commenced. *See Vu v. United States*, 648 F.3d 111, 113 (2d Cir. 2011). Although Petitioner argues that his first § 2255 proceeding has not reached final adjudication because this Court has recalled the mandate for that proceeding, he is incorrect. This Court recalled the 2021 mandate in 2d Cir. 21-1206, not the mandate issued in 2d Cir. 18-2143. *See* 2d Cir. 21-1206, docs. 54 (Mandate), 109 (Or.). Petitioner's other arguments on this point are inapposite or barred by binding precedent. In particular, *Jones v. Hendrix*, 599 U.S. 465, 469- 70 (2023), makes clear that § 2255(h) bars successive § 2255 motions "based solely on a more favorable

3a

*Appendix A*

interpretation of statutory law" adopted after a petitioner's first motion has reached final adjudication. Petitioner also cites *Magwood v. Patterson*, 561 U.S. 320 (2010) (holding that a § 2254 petition filed after a resentencing and an amended judgment was not successive because it was the first challenge to the amended judgment), and *Banister v. Davis*, 140 S. Ct. 1698 (2020) (holding that a timely Rule 59(e) motion to alter or amend a prior habeas decision was not a successive application), but neither of those decisions applies to the facts of his case.

Second, Petitioner may not avoid the successive requirements by presenting successive claims in a motion to recall the mandate for his direct appeal. *United States v. Fabian*, 555 F.3d 66, 68 (2d Cir. 2009); *Bottone v. United States*, 350 F.3d 59, 63 (2d Cir. 2003) ("[R]ecalling the mandate in such circumstances would be allowable only if it would be proper to authorize a second or successive collateral attack.").

Finally, Petitioner has not made a showing that he satisfies the prima facie standards of § 2255(h) because *Ciminelli* did not announce a new rule of constitutional law, as required by § 2255(h)(2), but merely a rule of statutory construction. *Ciminelli*, 598 U.S. at 316 ("In sum, the wire fraud statute reaches only traditional property interests. The right to valuable economic information needed to make discretionary economic decisions is not a traditional property interest. Accordingly, the right-to-control theory cannot form the basis for a conviction under the federal fraud statutes."). To the extent that *Ciminelli* relied on constitutional principles such as federalism to arrive at

4a

*Appendix A*

its conclusion, that does not mean that it announced a new rule of constitutional law. *See Washington v. United States*, 868 F.3d 64, 66 (2d Cir. 2017) (holding that *Mathis v. United States*, 579 U.S. 500 (2016), which interpreted the Armed Career Criminal Act, did not announce a new rule of constitutional law, and that, although its interpretation was "based in part on constitutional concerns, . . . those concerns did not reflect a new rule").

FOR THE COURT:
Catherine O'Hagan Wolfe,
 Clerk of Court

/s/ Catherine O'Hagan Wolfe

5a

**APPENDIX B — ORDER OF THE UNITED
STATES COURT OF APPEALS FOR THE
SECOND CIRCUIT, FILED OCTOBER 12, 2021**

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

21-1206

MICHAEL BINDAY,

*Petitioner,*

v.

UNITED STATES OF AMERICA,

*Respondent.*

At a stated term of the United States Court of Appeals
for the Second Circuit, held at the Thurgood Marshall
United States Courthouse, 40 Foley Square, in the City
of New York, on the 12th day of October, two thousand
twenty-one.

Present:

Pierre N. Leval,
Robert D. Sack,
Michael H. Park,
    *Circuit Judges.*

Petitioner moves for leave to file in district court a 28
U.S.C. § 2255 motion and/or 28 U.S.C. § 2241 petition. He

6a

*Appendix B*

also moves for leave to file an oversized reply brief. Upon due consideration, it is hereby ORDERED that the stay previously imposed by this Court is lifted, the motion to file an oversized reply brief is GRANTED, but the motion for leave to file a § 2255 motion and/or § 2241 petition is DENIED.

To the extent Petitioner's claim should be brought under § 2255, it would be successive within the meaning of § 2255(h) because Petitioner's first § 2255 motion challenged the same criminal judgment, was decided on the merits, and reached final adjudication before the filing of the present motion. *See Vu v. United States*, 648 F.3d 111, 113 (2d Cir. 2011); *Whab v. United States*, 408 F.3d 116, 118-19 (2d Cir. 2005). We reject Petitioner's argument that a claim based on *Kelly v. United States*, 140 S. Ct. 1565 (2020), would not be successive because that decision announced new law that was previously unavailable; § 2255(h) clearly covers that circumstance and the cases cited by Petitioner are inapposite. Petitioner is not entitled to relief under § 2255(h) because he has not made a prima facie showing that *Kelly* announced "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," as required by § 2255(h)(2). *Kelly* interpreted a statute and did not rely on any constitutional provision.

Petitioner also has not made a showing that he is entitled to relief under § 2241 because he has not made a showing of actual innocence. *See Cephas v. Nash*, 328 F.3d 98, 104 (2d Cir. 2003) (stating standard for proceeding under § 2241 instead of § 2255); *Triestman v. United States*, 124 F.3d

7a

*Appendix B*

361, 373–74 (2d Cir. 1997) (same). This Court has recently upheld the theory of conviction challenged by Petitioner, *United States v. Gatto*, 986 F.3d 104, 125–27 (2d Cir. 2021), *petition for cert. filed*, No. 21-169 (Aug. 2, 2021), and he has not otherwise shown that his case is covered by the ruling in *Kelly*.

> FOR THE COURT:
> Catherine O'Hagan Wolfe,
>  Clerk of Court
>
> /s/ Catherine O'Hagan Wolfe

8a

**APPENDIX C — JUDGMENT OF THE UNITED
STATES SUPREME COURT, FILED JUNE 23, 2023**

SUPREME COURT OF THE UNITED STATES
OFFICE OF THE CLERK
WASHINGTON, DC  20543-0001

Scott S. Harris
Clerk of the Court

(202) 479-3011

June 23, 2023

Mr. David William Shapiro, Esq.
The Norton Law Firm
299 Third Street, Suite 200
Oakland, CA 94607

Mrs. Elizabeth B. Prelogar, Esq.
Solicitor General
United States Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530-0001

**Re: Michael L. Binday
v. United States
No. 21-1241**

Dear Counsel:

Today, a certified copy of the judgment of this Court
in the above-entitled case was emailed to the Clerk of the
United States Court of Appeals for the Second Circuit.

9a

*Appendix C*

The petitioner is given recovery of costs in this Court as follows:

**Clerk's costs:**    **$300.00**

This amount may be recovered from the respondent.

Sincerely,

SCOTT S. HARRIS, Clerk

By

/s/ M. Altner
M. Altner
Judgments/Mandates Clerk

10a

*Appendix C*

SUPREME COURT OF THE UNITED STATES

No. 21–1241

MICHAEL L. BINDAY,

*Petitioner,*

v.

UNITED STATES

**ON PETITION FOR WRIT OF CERTIORARI** to the United States Court of Appeals for the Second Circuit.

**THIS CAUSE** having been submitted on the petition for writ of certiorari and the response thereto.

**ON CONSIDERATION WHEREOF**, it is ordered and adjudged by this Court that the petition for writ of certiorari is granted. The judgment of the above court in this cause is vacated with costs, and the case is remanded to the United States Court of Appeals for the Second Circuit for further consideration in light of *Ciminelli* v. *United States*, 598 U. S. ___ 2023).

**IT IS FURTHER ORDERED** that the petitioner, Michael L. Binday, recover from the United States, Three Hundred Dollars ($300.00) for costs herein expended.

May 22, 2023

A True Copy SCOTT S. HARRIS
Clerk of the Supreme Court of the United States
          /s/ Scott S. Harris