UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x

UNITED STATES OF AMERICA

V.                                                                                            12 CR 152 (CM)

MICHAEL BINDAY,

        Defendant.

--------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-4-24

DECISION AND ORDER DENYING (1) MOTION FOR COMPASSIONATE RELEASE AND (2) MOTION FOR RELIEF FROM A FINAL JUDGMENT PURSUANT TO RULE 60(b)

McMahon, J.:

    Michael Binday was sentenced to 144 months' imprisonment after being found guilty of conspiracy to commit mail and wire fraud, as well as actual mail and wire fraud. The evidence at trial established that Binday led his codefendants in a scheme designed to procure "stranger-originated life insurance" (or "STOLI") policies—policies on the lives of seniors for the benefit of investors who were strangers to them— by means of fraudulent applications.

    Binday spent the first five years of his sentence at FCI Otisville. But in September 2021, during the height of the COVID-19 Pandemic, the Bureau of Prisons released Binday to serve his sentence on home confinement. Thus, Binday has spent the last three-plus years serving his sentence in his luxury apartment on the upper westside of Manhattan.[1] His

---

[1] On September 9, 2021, BOP released Binday to home confinement. Binday lives at home, but must report to RRM New York, a residential reentry center (frequently known as a halfway house) twice a week. He is also subject to other conditions of home confinement, including an ankle monitor. Because he is on home confinement, Binday is supervised by the BOP rather than by this Court's Probation Office.

1

sentence—whether he serves it in a federal correctional facility or in his apartment—is scheduled to end on September 20, 2025.[2] *See* BOP Inmate Locator.

Before the Court are two motions filed by Binday: (1) a motion for compassionate release, Dkts. 491, 515; and (2) a motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure seeking to vacate the judgement of this Court dated May 23, 2018, denying his first Section 2255 petition, Dkt. 514.

The Government argues that (1) the motion for compassionate release should be denied for failure to exhaust, failure to show extraordinary and compelling circumstances, and based on the Section 3553(a) factors, and (2) the motion for Rule 60 relief should be denied because Rule 60 cannot be used as an end-run around the limitations on second or successive habeas petitions.

Binday's motions are denied.

Background

*Offense Conduct, Trial, and Appeal*

On October 7, 2013, following a twelve-day jury trial, Michael Binday and his two co-defendants, James Kergil and Mark Resnick, were found guilty of conspiracy to commit mail and wire fraud, in violation of Title 18, United States Code, Section 1349; mail fraud, in violation of Title 18, United States Code, Section 1341; and wire fraud, in violation of Title 18, United States Code, Section 1343, in connection with a scheme to defraud insurance companies which the defendants purported to serve as agents. The evidence at trial

---

[2] The Government suggests that by its calculation Binday's release date should be September 20, 2026— reflecting a 15% reduction for good time of a 144-month sentence that began on July 1, 2016.

established that Binday led his codefendants in a scheme designed to procure "stranger-originated life insurance" (or "STOLI") policies—policies on the lives of seniors for the benefit of investors who were strangers to them— by means of fraudulent applications. The co-conspirators recruited elderly people of modest means (the "Straw Insureds") to apply to insurance companies (the "Insurers") for universal life insurance policies, with the understanding that the resulting policies would actually be owned, paid for, and controlled by third-party investors such as hedge funds. Binday and his codefendants knew that Insurers expressly prohibited their agents from submitting STOLI business to them, in light of the economic risk that such policies imposed upon the Insurers. So, they deceived the Insurers about who was behind these policies, giving the false impression that wealthy individuals wanted the policies on their own lives for estate planning purposes. The defendants backed up the lies in the insurance applications with sham documents, arranged elaborate bank transactions to make it look like the Straw Insureds—rather than investors—were paying the premiums on policies, and instructed Straw Insureds they had recruited to refuse to speak to Insurer representatives and lie if conversation could not be avoided. All three defendants conspired to destroy documents and electronic records related to their fraud. Over the course of their scheme, the defendants submitted at least 92 fraudulent applications, resulting in the issuance of 74 policies with a total face value of over $100 million. These policies generated roughly $11.7 million in commissions to the defendants. *See United States v. Binday*, 804 F.3d 558, 566-67 (2d Cir. 2015).

On July 30, 2014, this Court sentenced Binday principally to 144 months' imprisonment.

On October 26, 2015, the Second Circuit affirmed the convictions and sentences of Binday and his co-defendants, directing only a limited remand, at the Government's request, for entry of an amended restitution order in a reduced amount of $37,433,914.17. On December 14, 2015, the Second Circuit denied Binday's petition for panel and *en banc* rehearing. On June 20, 2016, the Supreme Court denied Binday's petition for a writ of *certiorari*. On June 24, 2016, this Court entered the amended restitution order that the Second Circuit had directed be entered.

*Binday Surrenders*

Binday surrendered on July 1, 2016, to FCI Otisville to commence his term of imprisonment.

*The Rule 33 Motion*

On October 6, 2016, Binday filed a motion for a new trial based on purported "newly discovered evidence" pursuant to Rule 33(b)(1). Dkt. 394. On August 29, 2017, the Court denied the motion. Dkt. 431.

*The First Section 2255 Motion*

On June 20, 2017, Binday filed a Section 2255 motion raising several ineffective-assistance-of-counsel claims relating to issues of intent, materiality, economic harm, Binday's decision not to testify, and loss calculations at sentencing. Dkt. 420. On May 23, 2018, this Court denied the motion, rejecting the ineffective assistance of counsel claims as meritless, and declined to issue a certificate of appealability. Dkt. 448. On August 17, 2018, Binday asked the Court of Appeals for a certificate of appealability, which the Second Circuit denied on January 15, 2019. On May 6, 2019, the Second Circuit denied Binday's motion for panel

reconsideration or, in the alternative, for reconsideration *en banc.* On February 24, 2020, the Supreme Court denied Binday's petition for a writ of *certiorari.*

*The First and Second Compassionate Release Motion*

On May 5, 2020, Binday filed an emergency motion for compassionate release. Dkt. 464. On July 16, 2020, the Court denied the motion because, among other reasons, "[p]ermitting Binday to be released after serving less than a third of his twelve-year term of imprisonment would neither provide just punishment nor would it promote respect for the law." Dkt. 475 at 16.

On March 22, 2021, Binday moved for reconsideration of the Court's denial of his compassionate release motion. Dkt. 481. On March 24, 2021, the Court denied the motion for reconsideration.

On July 25, 2021, Binday moved again for compassionate release. Dkt. 491. However, in or about September 2021, during the peak of the COVID-19 Pandemic, the Bureau of Prisons placed Binday on home confinement. Thus, the Court deemed Binday's pending compassionate release motion to be moot.

*The Second Section 2255 Petition*

On March 12, 2021, Binday filed a motion styled under 28 U.S.C. §§ 2255 and 2241, arguing that his convictions are invalid in light of the Supreme Court's decision in *Kelly v. United States*, 140 S. Ct. 1565 (2020). Dkt. 479.

On April 9, 2021, Binday moved for bail pending his habeas petition, arguing that the Supreme Court's decision in *Kelly* constituted an extraordinary circumstance warranting release on bail while his habeas petition was decided. Dkt. 484.

On May 5, 2021, this Court ransferred Binday's Section 2255/2241 motion to the Second Circuit. Dkt. 489. On October 12, 2021, the Second Circuit denied Binday's request, writing:

> To the extent Petitioner's claim should be brought under § 2255, it would be successive within the meaning of § 2255(h) because Petitioner's first § 2255 motion challenged the same criminal judgment, was decided on the merits, and reached final adjudication before the filing of the present motion. *See Vu v. United States*, 648 F.3d 111, 113 (2d Cir. 2011); *Whab v. United States*, 408 F.3d 116, 118-19 (2d Cir. 2005). We reject Petitioner's argument that a claim based on *Kelly v. United States*, 140 S. Ct. 1565 (2020), would not be successive because that decision announced new law that was previously unavailable; § 2255(h) clearly covers that circumstance and the cases cited by Petitioner are inapposite. Petitioner is not entitled to relief under § 2255(h) because he has not made a prima facie showing that *Kelly* announced "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," as required by § 2255(h)(2). *Kelly* interpreted a statute and did not rely on any constitutional provision. Petitioner also has not made a showing that he is entitled to relief under § 2241 because he has not made a showing of actual innocence. *See Cephas v. Nash*, 328 F.3d 98, 104 (2d Cir. 2003) (stating standard for proceeding under § 2241 instead of § 2255); *Triestman v. United States*, 124 F.3d 361, 373–74 (2d Cir. 1997) (same). This Court has recently upheld the theory of conviction challenged by Petitioner, *United States v. Gatto*, 986 F.3d 104, 125–27 (2d Cir. 2021), *petition for cert. filed*, No. 21-169 (Aug. 2, 2021), and he has not otherwise shown that his case is covered by the ruling in *Kelly*.

Dkt. 492.

*The Second Section 2255 Petition – The Supreme Court Order*

On March 10, 2022, Binday petitioned the Supreme Court for certiorari based on this Court's refusal to let him file a second habeas petition. (S. Ct. No. 21-1241). On November 29, 2022, Binday moved in the Supreme Court for bail pending resolution of his certiorari petition. On December 10, 2022, Justice Sotomayor denied the bail application.[3]

---

[3] On November 1, 2022, Binday filed a motion in this Court seeking bail pending the Supreme Court's consideration of his certiorari petition. Dkt. 495. On November 15, 2022, Binday filed a second letter in support of his motion for bail. Dkt. 496. On November 16, the Court directed the Government to respond to the bail motion by November 21. Dkt. 497. On November 17, Binday filed a third letter in support of his motion for bail. Dkt. 498.

On May 22, 2023, the Supreme Court issued an order granting the certiorari petition in Binday's case, vacating this Court's judgment, and stating that "the case is remanded to the United States Court of Appeals for the Second Circuit for further consideration in light of *Ciminelli v. United States*."

*The Second § 2255 Petition – Proceedings on Remand from the Supreme Court*

On June 2, 2023, Binday moved in the Second Circuit for bail pending resolution of his application for leave to file a Section 2255 motion based on Ciminelli, and on June 29, 2023, the Second Circuit denied the bail application.

On May 6, 2024, the Second Circuit again denied Binday's motion to file a second Section 2255, petition, writing that:

> First, Petitioner's proposed § 2255 motion is successive because his previous § 2255 motion challenged the same criminal judgment, was decided on the merits, and reached final adjudication before the present proceeding commenced. *See Vu v. United States*, 648 F.3d 111, 113 (2d Cir. 2011). Although Petitioner argues that his first § 2255 proceeding has not reached final adjudication because this Court has recalled the mandate for that proceeding, he is incorrect. This Court recalled the 2021 mandate in 2d Cir. 21-1206, not the mandate issued in 2d Cir. 18-2143. *See* 2d Cir. 21-1206, docs. 54 (Mandate), 109 (Or.). Petitioner's other arguments on this point are inapposite or barred by binding precedent. In particular, *Jones v. Hendrix*, 599 U.S. 465, 469-70 (2023), makes clear that § 2255(h) bars successive § 2255 motions "based solely on a more favorable interpretation of statutory law" adopted after a petitioner's first motion has reached final adjudication. Petitioner also cites *Magwood v. Patterson*, 561 U.S. 320 (2010) (holding that a § 2254 petition filed after a resentencing and an amended judgment was not successive because it was the first challenge to the amended judgment), and *Banister v. Davis*, 140 S. Ct. 1698 (2020) (holding that a timely Rule 59(e) motion to alter or amend a prior habeas decision was not a successive application), but neither of those decisions applies to the facts of his case.
>
> Second, Petitioner may not avoid the successive requirements by presenting successive claims in a motion to recall the mandate for his direct appeal. *United States v. Fabian*, 555 F.3d 66, 68 (2d Cir. 2009); *Bottone v. United*

*States*, 350 F.3d 59, 63 (2d Cir. 2003) ("[R]ecalling the mandate in such circumstances would be allowable only if it would be proper to authorize a second or successive collateral attack.").

Finally, Petitioner has not made a showing that he satisfies the prima facie standards of § 2255(h) because *Ciminelli* did not announce a new rule of constitutional law, as required by § 2255(h)(2), but merely a rule of statutory construction. *Ciminelli*, 598 U.S. at 316 ("In sum, the wire fraud statute reaches only traditional property interests. The right to valuable economic information needed to make discretionary economic decisions is not a traditional property interest. Accordingly, the right-to-control theory cannot form the basis for a conviction under the federal fraud statutes."). To the extent that Ciminelli relied on constitutional principles such as federalism to arrive at its conclusion, that does not mean that it announced a new rule of constitutional law. *See Washington v. United States*, 868 F.3d 64, 66 (2d Cir. 2017) (holding that *Mathis v. United States*, 579 U.S. 500 (2016), which interpreted the Armed Career Criminal Act, did not announce a new rule of constitutional law, and that, although its interpretation was "based in part on constitutional concerns, . . . those concerns did not reflect a new rule").

On June 7, 2024, Binday filed yet another petition for *certiorari* in the Supreme Court. On July 18, 2024, Binday filed a letter with the Supreme Court asking it to defer ruling on his new certiorari petition until the Supreme Court decided *Kousisis v. United States*, No. 23-909.

On October 7, 2024, the Supreme Court denied Binday's petition for a writ of *certiorari*.

### The Instant Rule 60(b) Motion

On June 25, 2024, Binday filed a motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure seeking to vacate the judgement of this Court dated May 23, 2018, denying his first Section 2255 petition.

### The Instant Compassionate Release Motion

On July 1, 2024, Binday—who is serving his sentence in his Manhattan apartment—filed a renewed motion for compassionate release.

The "custodial" portion of Binday's sentence is scheduled to terminate on September 20, 2025.

Compassionate Release

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstance, § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

If a defendant demonstrates that he has exhausted his administrative remedies with the BOP, the Court must then consider whether the defendant has met his burden of establishing "extraordinary and compelling circumstances" warranting release. District courts may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). However, any reduction of a defendant's sentence must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §3582(c)(1)(A). For several years after passage of the First Step Act of 2018, United States Sentencing Guidelines § 1B1.13, entitled "Reduction in Term of Imprisonment Under 18

9

U.S.C. § 3582(c)(1)(A)," was "not 'applicable' to compassionate release motions brought by defendants ...." *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020). But Guidelines § 1B1.13 was amended effective November 1, 2023, and now once again provides guidance for courts adjudicating compassionate release motions. *See United States v. Cromitie*, No. 09 CR 558-01 (CM), 2024 WL 216540, at *4 (S.D.N.Y. Jan. 19, 2024) ("On November 1, 2023, the Sentencing Commission amended the Guidelines so that it now provides guidance for courts in deciding petitions initiated by both BOP and defendants.").

Of course, a court contemplating a defendant's release pursuant to § 3582(c)(1)(A)(i), must first consider the sentencing factors at 18 U.S.C. § 3553(a), to the extent they are applicable, and determine whether they counsel for or against release. A court may still deny compassionate release where the § 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.

*Binday has Exhausted his Administrative Remedies in the Bureau of Prisons*

The Government contends that Binday's motion for compassionate release should be dismissed for his failure to exhaust his administrative remedies with the Bureau of Prisons. According to the Government, Binday has not filed an administrative request for compassionate release with the halfway house or with the BOP since his release on home confinement.

The Government is correct that Binday's initial filing is silent on exhaustion. However, Binday states in his reply papers that he has remedied any omission in this regard: "To the extent Mr. Binday's supplement to his compassionate release motion requires a new round of exhaustion of administrative remedies, those remedies have now been exhausted. Indeed, on September 8, 2024, Binday submitted a written request to the Director of the Residential Reentry

Management Center (RRM) (the official in charge of Binday's home confinement) asking the director file a motion for compassionate release on his behalf. On September 17, 2024, Binday's request was denied. Dkt. 524-1.

Accordingly, Binday has exhausted his administrative remedies with the Bureau of Prisons.

*Binday has Failed to Demonstrate Extraordinary and Compelling Circumstances*

As a threshold matter, it is worth emphasizing that Binday is not asking to be released from prison (the typical ask that the Court deals with when deciding a compassionate release motion), but rather, to be relieved of the inconveniences associated with the rules of home confinement. While Binday spent the first 62 months of his 144 months sentence at FCI Otisville (i.e., in a federal prison, as the Court intended), he has served the last 38 months in his apartment on the upper west side of Manhattan (not at all what the Court intended); and, unless he violates BOP rules, he will be allowed serve the balance of his sentence (about one year) in his apartment (also not what the Court intended). How fortunate is Binday? How much more inconvenient it would be if he were back at Otisville— where the Court intended that he would serve his sentence.

Notwithstanding his good fortune in regard to his place of "confinement," Binday argues that he has shown extraordinary and compelling circumstances that warrant the Court reducing his sentence to time served, including: (1) medical issues; (2) religious issues; (3) issues with employment retraining; and (4) a challenge to his underlying conviction.

Binday claims that he has difficulty obtaining appropriate medical care; he says this even though he is on home confinement in the heart of New York City, a location that has, arguably, the greatest access to the finest medical care in the world. Binday's primary medical issue is

11

diabetes, which is a serious disease but a highly treatable one. Because Binday is on home confinement, he can arrange for his own medical care and travel to receive care from whatever medical specialist he likes. Binday's objection is that he needs to obtain approval for a medical appointment from the RRC a week in advance. Medical appointments for all individuals frequently require a week or more before they can be scheduled, and, in an emergency medical situation, Binday can call 911. Even if there were some slight burden on Binday's health caused by his home confinement, it would not come close to being sufficient to show extraordinary and compelling circumstances.

Binday claims that his home confinement and ankle monitor are inconvenient. He claims that he is woken up at night, is unable to attend various social obligations, and is unable to take a ritual religious bath. The inconveniences Binday faces from home confinement are far less serious than every individual incarcerated in a jail. They are therefore necessarily not extraordinary and compelling circumstances justifying release: if they were, every individual in jail would be able to show extraordinary and compelling circumstances.

Binday also claims that his home confinement makes it difficult for him to obtain employment retraining as a pilot. This, too, is simply a mild inconvenience and far below the requirement of extraordinary and compelling circumstances. Many individuals who are incarcerated have difficulty obtaining employment or job training, and Binday does not even argue that he needs this job training in order to support his family. *Cf United States v. Ahmed*, No. 19 CR. 603-1 (KPF), 2024 WL 2925112, at *5 (S.D.N.Y. June 10, 2024) (no extraordinary and compelling circumstances where the defendant argued that he was the primary breadwinner); *United States v. Eliopoulos*, No. 19-CR-651-LTS-07, 2023 WL 7325490, at *3 (S.D.N.Y. Nov. 7, 2023) (no extraordinary and compelling circumstances where the defendant's wife had to take

unpaid leave from work to care for the child and defendant claimed he would be the sole breadwinner for growing family).

Binday challenges the validity of his conviction yet again. Those challenges have been repeatedly rejected, and a challenge to a conviction is categorically not a basis for extraordinary and compelling circumstances. *United States v. Fernandez*, 104 F.4th 420, 430 (2d Cir. 2024) ("[W]e conclude that since challenges to the validity of a conviction must be made under section 2255, they cannot qualify as 'extraordinary and compelling reasons' under section 3582(c)(1)(A). Compassionate release is not a channel to habeas relief or an end run around the limitations of section 2255.")

None of these issues, individually or together, constitute extraordinary and compelling circumstances. Binday has fallen woefully short of meeting his burden of demonstrating grounds warranting compassionate release.

The § 3553(a) Factors

Even if Binday had met his threshold burden of demonstrating an "extraordinary and compelling" reason to be considered for compassionate release, the sentencing factors at 18 U.S.C. § 3553(a)—which the Court must consider in connection with a motion for a sentence reduction, *see* 18 U.S.C. § 3582(c)(1)(A)—counsel against a sentence reduction.

Binday's crimes were serious. As I explained when sentenced him to 144 months in prison:

> Forget about the amount of the fraud loss, whatever it was or will turn out to be; in the end, this was a scheme perpetrated over a span of years, brazen, as the government has correctly characterized it, and characterized by a number of truly horrible behaviors on the defendants' part.

13

> Starting with the callous disregard for the little people who were the straw purchasers of these policies: Venality, rampant mendacity, the creation of false documents, obstruction of efforts by the victims to ascertain the truth, obstruction of regulators and the government's efforts to learn the truth. It is precisely the sort of criminality that has left large segments of our society convince that all businessmen are crooks. And many an[ ] honest businessman or woman finds himself or herself unable to overcome the entirely undeserved belief that they are disreputable people and that they ought to be subject to disrepute.
>
> . . .
>
> There are crimes for which a critically important component of sentencing should be to send a message to the community, for the industry that this kind of behavior is intolerable, and to send a message to the community and to the industry that this sort of behavior is every bit as reprehensible as the types of crimes for which I and others like me routinely send poor, disadvantaged persons to prison for dozens of years.
>
> It is precisely in cases like this that for too many years there was an underemphasis on prison time. And it is entirely appropriate in my view to redress that underemphasis so that society understands that the guy who steals money while committing fraud while wearing a suit is no better than the guy who steals it, and a whole lot less of it, while wearing a hoodie.
>
> Insurance fraud may not qualify as a crime of violence within the meaning of our sentencing system and that, unfortunately, is why it is all too often punished not with the severity that it deserves.
>
> There are other types of violence, and business fraud do[es] violence to the thin tissue of trust that holds us together as a society. We cannot afford this sort of antisocial behavior and the cynicism that people will get away with it that is engendered in our citizenry. Only if white collar crime is punished commensurate with the damage it inflicts on society will citizens actually believe that the law metes out equal right[s] to the poor and to the rich, which words are the cornerstone of the judicial oath.

Sentencing Tr. at 42, 45-46. The Court reiterated its view of Binday's crimes when it denied his motion for compassionate release in 2020. Dkt. 475 at 14-16.

The 144-month term of imprisonment the Court imposed was arrived at after considering the goals of sentencing set out at 18 U.S.C. § 3553(a)— including, *inter alia*, that the sentence imposed reflect the seriousness of the offense, provide just punishment, provide adequate deterrence (both specific and general), and universally promote respect for the law. Reducing Binday's sentence now would tend to undermine those goals. As it is, Binday's home confinement means that he is subject to far less stringent conditions than he would be otherwise. In that regard, he got more of a break than he deserves.

The motion for compassionate release is denied.

Rule 60(b)

Binday moves pursuant to Rule 60(b) of the Federal Rules of Civil Procedure to vacate the judgement of this Court dated May 23, 2018, denying his first Section 2255 petition. Binday relies on three provisions of Rule 60(b). First, Binday argues under Rule 60(b)(4) that this Court lacked jurisdiction to rule on the Section 2255 proceeding because the right to control theory expanded federal criminal jurisdiction, and that because the Court lacked jurisdiction, the judgment is void. Second, Binday argues under Rule 60(b)(6) that the change in the law regarding right to control theory constitutes an extraordinary circumstance. Third, Binday argues under Rule 60(b)(1) that the judgment was based on a legal mistake.

All three arguments fail for the same reason: Binday is simply attempting to challenge his underlying conviction. His basic claim is that his conviction is invalid because the right to control theory has been invalidated by the Supreme Court. His challenge is to the integrity of the underlying conviction, *not* to the outcome of the first Section 2255 petition.[4] As both the Second

---

[4] Examples of challenges that in fact went to the integrity of a habeas petition rather than to the underlying conviction are (i) an argument that a Circuit Court judge could not sit by designation in the District Court to rule on

Circuit and Supreme Court have explained, when a criminal defendant wishes to challenge his conviction, he is subject to the requirements of AEDPA, and may not use Rule 60(b) as an end-run around AEDPA's limitations. *Harris v. United States*, 367 F.3d 74 (2d Cir. 2004); *Gonzalez v. Crosby*, 545 U.S. 524, 531–32 (2005).

Binday makes a perfunctory argument to address the clear rule of *Harris* and *Gonzalez*: "Applying an unsound theory to reject a section 2255 motion lacks integrity because it validates governmental overreach and the judicial errors that accept the government's tactics; it tells the public that the government wins even when the Supreme Court abrogates the legal theory used to convict someone." R. 60 Mot. at 16. But that is an argument about the merits of the underlying conviction— a conviction that has been extensively challenged and upheld on appeal; most recently on October 7, with the Supreme Court denning his motion for certiorari. Binday essentially argues that because *he believes he is right about the merits of the underlying conviction*, the procedural bar of second and successive habeas petitions should not apply. That is not the rule.

Binday's Rule 60(b) motion is denied.

The Court declines to issue a certificate of appealability because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. Section 2253(c)(2); *see United States v. Perez*, 129 F.3d 255, 260 (2d Cir. 1997). Further, the Court finds, pursuant to 28 U.S.C. Section 1915(a)(3), that any appeal from an order denying this motion would not be taken in good faith. *See Feliz v. United States*, 2002 WL 1964347, at *7 (S.D.N.Y. 2002).

---

a habeas petition, *Williams v. United States*, No. 14-CR-784 (RJS), 2024 WL 3728073, at *2 (S.D.N.Y. Aug. 8, 2024); (ii) an argument that habeas counsel was constitutionally ineffective, *Harris v. United States*, 367 F.3d 74, 76 (2d Cir. 2004); and (iii) an argument that the district court was required to hold an evidentiary hearing on the habeas petition, *United States v. Zullo*, No. 09 Cr. 64-2, 2018 WL 10246990, at *2 (D. Vt. Apr. 30, 2018).

This constitutes the decision and order of the court.

Dated: November 4, 2024

_____
Colleen McMahon
U.S.D.J.

BY ECF TO ALL PARTIES